UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

_____ )
CPC CAROLINA PR, LLC,                    )
                                         )
                  Plaintiff,             )
                                         )
         v.                              )        CIVIL ACTION
                                         )        NO. 3:18-01555-WGY
PUERTO RICO CVS PHARMACY, LLC,           )
CVS PHARMACY, INC.,                      )
                                         )
                  Defendants.            )
_____ )

YOUNG, D.J.[1]                                    September 30, 2020

**MEMORANDUM & ORDER**

## I. INTRODUCTION

     This Order addresses the lead case in a consolidated action
concerning the real estate development of a CVS Pharmacy in
Carolina, Puerto Rico that unwound after four years of
preparation.[2]  Had all gone according to plan, the plaintiff CPC
Carolina PR, LLC ("CPC Carolina") was to acquire certain
contiguous pieces of property, including parcels from four

_____

     [1] Of the District of Massachusetts, sitting by designation.
     [2] The Court refers to the plaintiffs in the following
consolidated actions collectively as "the Sellers": (1) Cruz-
Marrero v. CPC Carolina PR, LLC, 3:19-cv-01776-WGY; (2)
Hamdallah v. CPC Carolina PR, LLC et al., 3:19-01287; (3) Vega-
Rodriguez et al. v. CPC Carolina PR, LLC et al, 3:19-cv-01288-
WGY; and (4) Nieves-Roman v. CPC Carolina PR, LLC et al., 3:19-
cv-01289-WGY (collectively the "Consolidated Actions").

Sellers in the Consolidated Actions, aggregate the properties, and lease the property to the defendant Puerto Rico CVS Pharmacy, LLC ("CVS"),[3] which would construct and operate the pharmacy.  The deal fell through.  The CVS Parties blame CPC Carolina; CPC Carolina blames the CVS Parties.  Sellers, in the Consolidated Actions, blame both.

After discovery, CPC Carolina moves for partial summary judgment against the CVS Parties, and the CVS Parties cross-move for summary judgment against CPC Carolina.  CVS and CPC Carolina both move for summary judgment against the Sellers.  The Court held a hearing on the motions for summary judgment on July 30, 2020 and July 31, 2020.  For the reasons stated below, as between the CVS Parties and CPC Carolina, the anticipatory repudiation/breach of contract claims survive summary judgment and will proceed to bench trial.[4]  The Court holds in abeyance, and under advisement, the motions for summary judgment in the Consolidated Actions pending disposition of this lead action.

---

[3] CVS and co-defendant CVS Pharmacy, Inc. are collectively referred to as the "CVS Parties."

[4] No party in the lead case has requested a jury trial, and therefore such claim has been waived.  Fed. R. Civ. P. 38(d) ("A party waives a jury trial unless its demand is properly served and filed."); Compl., ECF No. 1; Civil Cover Sheet, ECF No. 1-2; CVS Answer Counterclaim, ECF No. 13; CPC Answer to Counterclaim, ECF No. 15.

## II.   BACKGROUND

### A.   Facts

The undisputed facts are taken from the parties' respective statements of undisputed material fact and the Court's independent review of the record.  <u>See</u> CPC Statement Undisputed Material Fact Supp. Summ. J. ("CPC SUMF"), ECF No. 72; CVS Resp. CPC Statement Undisputed Material Facts Supp. Partial Summ. J. ("CVS Resp. SUMF"), ECF No. 110; CPC's Reply Defs.' Opp'n Statement Material Facts Supp. Mot. Partial Summ. J. ("CPC Reply SUMF"), ECF No. 140; CVS Statement Undisputed Material Facts Supp. Summ. J. ("CVS SUMF"), ECF No. 78; CPC's Resp. CVS's Statement Undisputed Material Facts Supp. Mot. Summ. J., ("CPC Resp. SUMF"), ECF No. 105.

On October 3, 2013, each of the Sellers entered into similar Purchase Agreements (hereinafter the "Purchase Agreements") with KRB Universal Investments, LLC ("KRB") to sell their respective properties located in Valle Arriba Heights, Carolina, Puerto Rico (the "Parcels").  CPC SUMF ¶¶ 1-2.  On February 24, 2015 KRB assigned its rights under the Purchase Agreement to CPC Carolina.  CPC SUMF ¶ 3.

Attorney Arnaldo Villamil ("Villamil") was engaged by CVS to represent it in negotiating a lease, and for due diligence (including title issues) to open the store at issue here -- what CVS identified as store #10640 ("the Store").  CPC SUMF ¶¶ 5-6,

[3]

15.   He worked on this transaction with Kristen Donabedian
("Donabedian"), a CVS in-house senior legal counsel in the real
estate division.   CPC SUMF ¶¶ 8-9.   Donabedian was responsible
for determining whether the requirements to accept possession of
the Premises were satisfied.   CPC SUMF ¶ 12.   Donabedian was
also the assistant secretary for Puerto Rico CVS Pharmacy, LLC,
an entity formed for the purpose of opening the Store.   CPC SUMF
¶¶ 10-11.[5]   Attorney Will Lovell ("Lovell") represented CPC
Carolina in the transaction.   CPC SUMF ¶ 25, CVS Resp. SUMF ¶
98, CPC Reply SUMF ¶98.

On March 30, 2015, CVS and CPC Carolina executed a Ground
Lease (the "Ground Lease") for the lease of the Store property
which was to be aggregated from properties that included the
Parcels of the Sellers.   CPC SUMF ¶ 4; see Compl., Ex. 1, Ground
Lease, ECF no. 1-1.   Section 2 of the Ground Lease provides for,
among other things and relevant to this dispute, evaluation and
delivery of the Premises to CVS.   Relevant here, is Section
2.1(e) that has additional conditions for possession:

> Notwithstanding anything to the contrary in this
> Lease, in no event shall [CVS] be obligated to accept
> possession of the Premises until Tenant shall have:
> . . .

---

[5] Michael Buckless ("Buckless") was the Vice President of
Real Estate at CVS Pharmacy, Inc., who oversaw the negotiation
of documents and construction of the Store.   CPC SUMF ¶¶ 13, 14,
16.   One of Buckless's superiors at CVS Pharmacy, Inc. was Brian
Bosnic ("Bosnic").   CPC SUMF ¶ 61.

(ii) received a leasehold policy of title insurance with respect to the Premises, which policy shall be satisfactory to [CVS]; and

(iii) received and recorded a Deed of Constitution of Lease pursuant to Section 29 [of the Ground Lease] . . .

Ground Lease, ¶ 2.1(e).

On August 26, 2015, the Evaluation Period ended after an extension to perform additional environmental testing. CPC SUMF ¶ 43. Prior to the expiration of the Evaluation Period, CPC Carolina and CVS became aware that eight parcels were subject to certain Restrictive Covenants. CPC SUMF ¶ 44. During this time period CVS never objected to the Restrictive Covenants nor terminated the Ground Lease. CPC SUMF ¶¶ 45-46.

In July 2015, the business environment in Puerto Rico became less favorable to CVS, and the outlook for the Store less profitable. CPC SUMF ¶ 47. Between November 2016 and March 2017, CVS decided to pull out of all Puerto Rico deals, subject to legal approval, when recommended by senior management. CPC SUMF ¶ 51. Buckless testified, however, that if CPC Carolina complied with the Ground Lease, CVS was legally required to move forward. CVS Resp. SUMF ¶ 51. CVS perceived at that time that it had no ability to extract itself from the Ground Lease. CPC SUMF ¶ 52.

In early May 2017, CPC Carolina planned to acquire the Parcels and execute deeds of consolidation and protocolization of lease in accordance with the Ground Lease Deed.  CPC SUMF ¶ 56.  The acquisition of the Parcels did not proceed as scheduled in May 2017, however, because one of the sellers (a third party not involved in the Consolidated Cases) of a relevant parcel did not disclose the fact that a member of that seller's estate was a minor ("Minor's Title Issue"), and sale would require court authorization.  CPC SUMF ¶¶ 55.  CVS was aware by June, 2017 of the Minor's Title Issue that prevented the acquisition of the Parcels by CPC Carolina.  CPC SUMF ¶ 58, CVS Resp. ¶ 58.  CPC Carolina requested an extension to deliver possession of the Premises, which was denied by CVS.  CPC SUMF ¶¶ 59-60, CVS Resp. SUMF ¶¶ 59-60.  CVS had decided that no further extensions would be permitted under the Ground Lease.  CPC SUMF ¶¶ 60-62, CVS Resp. SUMF ¶¶ 60-62.

On June 22, 2017, at 5:17 p.m., Villamil sent an email to Donabedian and others at CVS "re: CVS Store 10640 Monserrate Avenue."  ECF 76-8 at 4-5.  That email is entirely redacted, presumably on attorney-client privilege or work product doctrine grounds.  On June 25, 2017, Buckless forwarded that email to Bosnic at CVS, modifying the re: line to include "OPPORTUNITY TO CANCEL LEASE."  Id. at 1. Buckless wrote:

> This is one of the two remaining stores still to open
> in PR.  This site was reviewed, and supported by Kevin
> H, to refresh your memory . . .  I believe by July 4
> we will have the right, but not the obligation, to
> cancel out lease.  If we don't cancel by then....we
> are fully committed[.]  We have already spent nearly
> 900k in the approvals...which is not unusual...we are
> at permits.  We stand to lose a lot more in operating
> this location.  Under normal circumstances we would
> never walk at this point, since the property will be
> delivered to us....just a [couple] months late.  The
> "late" delivery is our out of the deal . . . Thoughts?

Id. (unspaced ellipses in original).

On June 27, 2017, at 10:43 a.m., Buckless sent an email to
Donabedian and others at CVS with the same "re:" line.  That
email is entirely redacted, again, presumably on attorney-client
privilege or work product doctrine grounds.  Id.  On June 27,
2020, at 10:49 a.m., Bosnic responded "I believe we are ok to
cancel or terminate," id. at 2., and later that afternoon Bosnic
confirmed "Scott B. [and] I are ok to terminate," id. at 5.

On that same day, CVS employee Robin Peterson, a CVS
employee working with Buckless, sent an email to Villamil,
copying Donabedian.  Id. at 7.  That email is entirely redacted,
presumably on attorney-client privilege or work product doctrine
grounds.  In response, Peterson later stated:

> Mike [Buckless] is aware we have a very high dead deal
> cost here.  Ops does not want to continue.  Make sure
> your vendors know we are not proceeding.  Thank you.

Id. at 6 (emphasis supplied).  CVS was taking steps to extract
itself from the deal.

Under the Ground Lease, CPC Carolina was required to acquire title to the Premises by July 4, 2017.  CPC SUMF ¶ 63, CVS SUMF ¶ 16.  By that date, however, the issue had not been resolved.  On July 10, 2017, Donabedian wrote to CPC Carolina purporting to terminate the Ground Lease and invoke the thirty-day cure period.  CPC SUMF ¶ 63; see ECF No. 76-7 (the "July 17, 2017 Letter"), CVS Resp. SUMF ¶ 63.

On July 12, 2017, after conferring with CPC Carolina's counsel, Loyda Rivera ("Rivera"), Villamil sent a letter to CPC Carolina acknowledging that the Minor's Title Issue would be resolved, but holding CPC Carolina to the July 14, 2017 deadline under the Ground Lease for it to acquire the Parcels and deliver possession of the Premises to CVS.  CPC SUMF ¶ 66; ECF No. 78-8. The July 12, 2017 Letter was acknowledged by CPC Carolina.  Id.

CPC Carolina did not, however, acquire the Parcels and tender possession by July 14, 2017, and on July 17, 2017, Donabedian again wrote to CPC Carolina providing a final thirty-day notice to cure under the Ground Lease.  CPC SUMF ¶ 67; ECF No. 78-9.

The next day, on July 18, 2017, Villamil sent an email to Donabedian, Buckless and others regarding the Store.  The email is completely redacted, presumably on attorney-client privilege or work product doctrine grounds.  ECF No. 76-8. at 8.  Ten

[ 8 ]

minutes later, Buckless forwarded the email to Bosnic and others
stating:

> As I indicated roughly a month ago, I saw a
> potential opportunity to terminate the lease of the
> approved deal. . . We sent a default notice as
> required, since [CPC Carolina] had not yet acquired
> title to all 14 properties that he had to deliver to
> CVS by July 4.  The 30 day notice puts him on notice
> that he is in default, and we intend to terminate the
> lease.  He HAS informed that he WILL acquire title to
> all properties within the 30 day notice period.  At
> this time, he is one short.  If/when he does acquire,
> we will NOT be able to terminate the lease, and we
> will therefore start construction and open the
> location in 2018, as required per the lease agreement.

Id.  The deal was apparently back on, at least potentially.

From CPC Carolina's and the Sellers' perspective, the deal
was indeed on, and three days later, on August 4, 2017, Rivera
informed Sellers via letters that the closing would take place
on Monday, August 14, 2017 ("the Sellers' Closings").  See ECF
Nos. 64-6, 66-6, 68-6 and 70-6, respectively.  Later, the
Sellers' Closings were rescheduled for August 16, 2017.  CPC
SUMF ¶ 68.

Meanwhile, with the Sellers' Closings scheduled, CPC
Carolina and CVS were dealing with two inter-related issues that
could affect acceptance of possession under Section 2.1(e) of
the Ground Lease: (1) the recordability of a deed; and (2)
satisfactory title insurance.  CVS Resp. SUMF ¶ 132; CPC Reply ¶
132.  Around August 10, 2017, "Donabedian had a telephone
conversation with Lovell where she reiterated that CVS would not

[9]

accept possession until the contractual conditions were met--
namely, '[a] satisfactory title insurance policy and a deed of
lease -- a deed of lease both in terms of its form, its
recordable form and actually getting it recorded.'"  CVS Resp.
SUMF ¶ 132 (quoting CVS SUMF, Ex. 7, Dep. of Kristine Donabedian
("Donabedian Dep.") 106:2-5, ECF No. 72-7).  This conversation
leads directly into the mixed questions of law and fact as to
the whether these conditions were met.

On that same day, specifically with respect to the lease
recordability issue, Villamil exchanged emails with Donabedian,
counseling that a Memorandum of Lease could substitute the deed
of lease requirement.  ECF No. 78-3.  Donabedian had no interest
in a work-around, stating to Villamil: "I'm not looking for
practical substitutes to the lease requirements.  I want to
adhere to the lease.  Is there enough of a material difference
in the two documents that I can claim that requirement for
possession hasn't been satisfied?"  Id.

Villamil responded: "I believe you could stick to a strict
interpretation of the lease which requires a deed of lease.  I
believe [CPC Carolina] could come back to you by offering a
commitment to obtain judicial cancellation of the restrictions
post-closing.  Of course, that is not an exact quid pro quo but
it is doable."  Id.

On August 16, 2017, the day of the expiration of the Cure
Period, Donabedian informed Lovell that CVS could not accept
possession at that time without having received a satisfactory
title insurance policy and a recordable deed of constitution of
lease.[6]  Lovell and CPC Carolina interpreted this statement as
CVS stating they were out of the deal.  CVS SUMF, Ex. 3,
Deposition of Will Lovell ("Lovell Dep.") 89:18-20, 97:2-23, ECF
No. 78-3; id., Ex. 4, Deposition of John Graham ("Graham Dep.")
116:3-117:19, ECF No. 78-4.  In response, Lovell contacted
Rivera and immediately suspended the Sellers' Closings.  ECF No.
132, Ex. 3, Deposition of Loyda Rivera Torres ("Rivera Dep.")
207:19-23, ECF No. 132-3.  There is no record of any further
communication between CPC Carolina and CVS on August 16, 2017.

---

[6] Specifically, at her deposition, Donabedian states:

> What I told him was that CVS was not prepared to
> accept possession of the premises at this time because
> there were two conditions to accept it that were set
> forth in the lease that hadn't been satisfied. That's
> what I told him.

Donabedian Dep. 133:20-24.  At summary judgment, in June 2020,
Donabedian avers in pertinent part:

> On August 16, 2017, I informed Will Lovell (attorney for
> CPC) that CVS could not accept possession of the Premises
> at that time without having received the satisfactory
> title insurance policy (as required by the Ground Lease)
> or having received the recordable deed of constitution
> of lease, neither of which were provided by CPC.

Donabedian Aff. ¶ 8, ECF No. 110-15.

On August 17, 2017, CPC Carolina sent a letter to CVS accusing it of breaching its obligations under the Ground Lease. ECF No. 78-24.

On August 18, 2017, Donabedian sent an email to Peterson, copying Buckless and others regarding the Store.  That email is completely redacted, presumably on attorney-client privilege or work product doctrine grounds.  ECF No. 76-8 at 9.  That same evening, Buckless sent an email copied to Bosnic stating: "Termination of this deal has been accomplished, as requested." ECF No. 76-8 at 9.  Later that evening Buckless sent an email to another CVS employee stating:

> As of today there will be no store here.  Brian B[osnic] wanted out.  I got him out.  Potential legal battle.  Please do not forward.

ECF No. 76-8, p. 10.  That email was eventually forwarded to Bosnic.  Id.  When asked about "as requested," Buckless responded that because of the financial situation in Puerto Rico, "when the dates were not met Robert Marcello and [Brian] Bosnic had requested that we do not extend, that we get out of the deal."  Dep. of Michael Buckless 130:4-14.

### B.   The Lawsuit

On August 8, 2018, CPC Carolina filed suit against the CVS Parties.  Compl. ECF 1.  For its First Cause of Action, CPC Carolina seeks a declaratory judgment that CVS waived any right to terminate the Ground Lease due to the existence of

[12]

Restrictive Covenants, that relying on the Restrictive Covenants
as a reason to not accept possession of the Premises constituted
a breach of the Ground Lease and anticipatory repudiation, and
that such anticipatory breach excused performance.  Compl. ¶¶
40-47.  For its second cause of action, CPC Carolina seeks
specific performance: that "CVS accept possession of the
premises subject to Restrictive Covenants" and an instruction
that the Escrow Agent "release the amount of $300,000 currently
in escrow . . . to CPC [Carolina] upon delivery of the Premises
to CVS."  Compl. ¶ 52.  For its Third and Fourth Causes of
action, in the alternative to specific performance, CPC Carolina
seeks contractual damages for breach of contract or anticipatory
breach of contract.  Compl.  ¶¶ 48-71.  For its Fifth Cause of
Action, CPC Carolina seeks damages under Article 1802, 31 P.R.
Laws Ann. § 5141.  Compl. ¶¶ 72-78.  For its Sixth Cause of
Action, CPC Carolina seeks estoppel under the "Doctrina De Los
Actos."  Compl. ¶¶ 79-84.  For its Seventh Cause of Action, CPC
Carolina is seeking unjust enrichment damages.  Compl. ¶¶ 85-87.
Finally, for its Eighth Cause of Action, CPC Carolina seeks
"Attorney's Fees and Costs."  Compl. ¶¶ 88-89.  On October 26,
2018, CVS counterclaimed for breach of contract under the Ground
Lease. CVS Answer Counterclaim, ECF No. 13.

### C.   CPC Carolina and CVS Cross-Motions For Summary Judgment

The parties have filed and briefed their cross-motions for summary judgment on certain claims.  CPC Mot. Summ. J. ("CPC Mot."), ECF No. 73;  Defs.' Mot. Summ. J. ("CVS Mot."); ECF 79; Opp'n Defs.' Mot. Summ. J. ("CPC Opp'n"), ECF No. 106;  Defs.' Resp. CPC Mot. Summ. J. ("CVS Opp'n") ECF No. 111; Reply Defs.' Opp'n CPC Mot. Summ. J. (CPC Reply"), ECF No. 146; Defs. Reply Supp. Mot. Summ J., ECF 147 ("CVS Reply"), ECF No. 147.

## III. ANALYSIS

### A.   The Summary Judgment Standard

The Court has considered the parties' submissions and the record, and heard oral argument on the motions.  ECF Nos. 159, 160.  For the reasons stated below, there are genuine issues of material fact that preclude judgment as matter of law as to all breach of contract claims.  As these parties have waived a jury trial, this Court will conduct a bench trial, holding in abeyance and under advisement CPC Carolina's and CVS's motions for summary judgment in the Consolidated Actions pending resolution of the lead case.

The familiar summary judgment standard was recently reiterated by the First Circuit and is restated here:

> Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A

[14]

> genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). "Facts are material when they have the 'potential to affect the outcome of the suit under the applicable law.'" Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The party opposing summary judgment "bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" Theidon v. Harvard Univ., 948 F.3d 477, 494 (1st Cir. 2020) (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)). "For this purpose, [it] cannot rely on 'conclusory allegations, improbable inferences, acrimonious invective, or rank speculation.'" Id. (quoting Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010)).

Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 87 (1st Cir. 2020).

In reviewing motions for summary judgment, the "Court is 'obliged to [ ]view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor.'" Humphrey v. Town of Spencer, No. CV 4:14-40127-TSH, 2017 WL 2261744, at *4 (D. Mass. Mar. 6, 2017) (Hennessy, M.J.) (citing LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). In the context of the cross-motions for summary judgment, "[c]ross-motions for summary judgment do not alter the summary judgment standard, but instead simply require [the Court] to determine whether either of the parties deserves judgment as a matter of law on the facts that

[15]

are not disputed." Watchtower Bible Tract Soc'y of New York,
Inc. v. Municipality of Ponce, 197 F. Supp. 3d 340, 348 (D.P.R.
2016) (Gelpi, J.) (quoting Wells Real Estate Inv. Trust II, Inc.
v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir.
2010)).  While "each motion for summary judgment must be decided
on its own merits, each motion need not be considered in a
vacuum." Id.

### B. CPC Carolina – CVS Parties Cross-Motions for Summary Judgment

The primary contention between CPC Carolina and CVS
concerns which party breached the Ground Lease first on August
16, 2017.  CVS claims that it was only reciting its position on
contractual terms to which it was entitled.  CPC Carolina claims
that CVS prematurely walked away from the Ground Lease.  The
resolution of this issue largely determines the rest of the
case, and perhaps the Consolidated Actions, but there are
genuine issues of material fact that preclude summary judgment
and merit a trial.  As to the remaining claims by CPC Carolina,
CVS is entitled to summary judgment.

      **1.**    **Genuine Disputes as to Material Fact Preclude Cross Motions for Summary Judgment on CPC Carolina's First, Second, Third, Fourth and Eighth Causes of Action, and CVS's Counterclaim for Breach of Contract.**

          **a.**    **CPC Carolina's and the CVS Parties' Arguments**

CPC Carolina and the CVS Parties argue that each breached the Ground Lease first.  CPC Carolina argues that CVS anticipatorily breached the Ground Lease when Donabedian spoke with Lovell on August 16, 2017, informing him that it would not take possession because of the lack of a suitable title insurance policy and receipt of a recordable deed.  CPC Mot. 16-17.  CPC broadly argues that CVS's reasons were a ruse, and those two reasons were legally insufficient in any event because: (1) CVS had waived any requirement that title insurance cover Restrictive Covenants and (2) the Ground Lease was recordable.  CPC Mot. 17-24.

CVS counters by arguing (1) that it was never required to accept possession until those conditions were satisfied, (2) the conditions were never satisfied, (3) that CPC Carolina is asking the Court to re-write the Ground Lease by ignoring the supremacy language, (4) the existence of the restrictive covenants had no bearing on the conditions because CVS expected insurance to cover the restrictions, and (5) there was no anticipatory

repudiation of the lease because it merely insisted on conditions of the lease. CVS Opp'n 3-15.

CPC replies that (1) CVS approved the Restrictive Covenants and therefore a title insurance policy excepting such Restrictive Covenants cannot be unsatisfactory on that ground, and (2) refusal to accept possession of Premises without executing and presenting the deed to the Registrar is an anticipatory breach of the Ground Lease. See generally CPC Reply.

On the flip side, CVS affirmatively moves for summary judgment as to its counterclaim for breach of contract because (1) CPC Carolina failed to acquire and deliver possession of the Premises as required by the Ground Lease and breached its representations, and (2) there is an absence of evidence supporting a breach of contract claim by CVS or anticipatory breach, as CVS merely asserted its rights under the Ground Lease for conditions that were not met. CVS Mot. 7-20. CPC Carolina predictably argues that the deed was recordable, and that the Ground Lease must be interpreted to exclude a rejection of possession of the Premises on the condition of a title policy that does not cover Restrictive Covenants. CPC Opp'n 7-21. CVS' Reply essentially repeats the argument and counterarguments above. See generally CVS Reply.

[18]

> **b.    Analysis of CPC and CVS Summary Judgment Motions**

Puerto Rico law recognizes the doctrine of anticipatory repudiation.  "Under the law of Puerto Rico, where a party clearly expresses its intent not to perform its contractual obligations, the party will be found to have performed an anticipatory breach of the contract."  Malot v. Dorado Beach Cottages Assocs., No. CV 03-1185 (DRD), 2009 WL 10680820, at *3 (D.P.R. Dec. 22, 2009) (Dominguez, J.) (citing 31 L.P.R.A. §§ 3017, 3052 (1990)).  Moreover, "where a party insists 'willfully or by mistake, on preconditions to performance not stated in the contract' that party will be found to have breached the contract by anticipatory repudiation."  Id.  Furthermore, "[a]nticipatory repudiation may come in the form of either words or conduct . . . ."

While the parties exert much effort arguing the legality and fulfillment of the two underlying conditions, that is, the recordability of the deed and the receipt of a satisfactory title insurance policy, the parties avoid a threshold question of fact: What did Donabedian mean through her words or conduct when she spoke with Lovell on August 16, 2017 on behalf of CVS? Even if Donabedian had no obligation to indicate whether CVS would accept possession under the Ground Lease during the Cure Period, it is undisputed that Donabedian nevertheless did speak

with CPC Carolina's representative, Lovell, at a critical
moment: the eleventh hour of a tenuous commercial transaction.
All reasonable inferences taken in favor of CPC Carolina on
CVS's motion for summary judgment, and independently, all
reasonable inference taken in favor of CVS on CPC Carolina's
motion for summary judgment reveal a genuine disputed issue of
material fact, viz. whether Donabedian through her <u>words or
conduct</u> clearly expressed an intent not to perform the Ground
Lease as a whole, and prematurely.

To be sure, the arguments raised by the parties as to the
underlying conditions and interplay of Section 2.1(e) of the
Ground Lease with other aspects of the Ground Lease are
substantial and well taken, but examination of those issues is
pretermitted by the existence of this overarching question of
fact.  In the end, similar to <u>Malot</u>, 2009 WL 10680820, at *4,
where questions of fact exist as to intent and credibility,
neither party is entitled to judgment as matter of law on this
critical issue.  The Court therefore need not -- and does not --
decide the substantive arguments raised as to the underlying
conditions, warranties, and escrow.  Accordingly, CPC Carolina's
partial motion for summary judgment against CVS is <u>DENIED</u> and
the CVS Parties' motion against CPC Carolina is <u>DENIED</u> as to the
CVS Parties' Counterclaim and CPC Carolina's First, Second,
Third, Fourth and Eighth Causes of Action.

[20]

### 2. CPC Carolina's Tort Claims under Article 1802 – Fifth Cause of Action are DISMISSED

Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 ("Article 1802") "generally does not apply in the context of commercial transactions." Linares-Acevedo v. Acevedo, 38 F. Supp. 3d 222, 228 (D.P.R. 2014) (McGiverin, J.) (citing Isla Nena Air Servs., Inc. v. Cessna Aircraft Co., 449 F.3d 85, 88 (1st Cir. 2006); Betancourt v. W.D. Schock Corp., 907 F.2d 1251, 1255 (1st Cir. 1990) ("We do not see how he can assert a tort claim, however, for Puerto Rico's negligence statute, 31 L.P.R.A. § 5141, does not apply in the context of a commercial transaction.") Under Puerto Rico law, however, an exception provides that "[a] plaintiff may bring a negligence claim based on a contractual relationship when there is both an alleged breach of contract and an alleged breach of the general duty not to negligently cause injury." Nieves Domenech v. Dymax Corp., 952 F. Supp. 57, 65–66 (D.P.R. 1996) (Laffitte, J.) (emphasis in original) (citing Ramos Lozada v. Orientalist Rattan Furniture Inc., 92 JTS 74, 9577 (1992)). "This general duty not to act negligently must arise out of conditions separate from the parties' contract" and "[i]f a plaintiff's damages arise exclusively from a defendant's alleged breach of contract, the plaintiff does not have a separate cause of action

for negligence." Id. Subsequent case law in Puerto Rico is
helpful to the analysis of the claims here.

In Castillo-Perez v. Bosques-Cordero, the court held that
cease and desist letters and conduct relating to litigation over
a contract could not form the basis of a tort claim because it
constituted the same conduct as breach of contract. No. CV 10-
1584 (JAF/BJM), 2011 WL 13233491, at *10 (D.P.R. July 15, 2011)
(McGiverin, M.J.), report and recommendation adopted, No. CV 10-
1584 (JAF), 2011 WL 13233446 (D.P.R. Aug. 30, 2011). A tort
claim for defamation with respect to defendants' conduct towards
third parties, however, could form the basis of an Article 1802
claim. Id. at *11. The Court explained:

> Puerto Rico law provides that "[o]bligations are
> created by law, by contracts, by quasi contracts, and
> by illicit acts and omissions or by those in which any
> kind of fault or negligence occurs." 31 L.P.R.A. §
> 2992. "It is only when the obligation is not of a
> contractual nature, that is, only when an illicit act
> or omission involving fault or negligence is present,"
> that Article 1802 applies. Stainless Steel & Metal
> Mfg. Corp. v. Sacal V.I., Inc., 452 F. Supp. 1073,
> 1081 (D.P.R. 1978) (citing 31 L.P.R.A. §§ 2992, 5141).
> See also Nieves Domenech [v. Dymax Corp.], 952 F.
> Supp. [57] at 65-66 [(D.P.R. 1996), Laffitte, J.)]
> (Article 1802's "general duty not to act negligently
> must arise out of conditions separate from the
> parties' contract"). While Bosques's alleged
> defamation concerns the Agreement, there is no
> evidence that her statements contravene the Agreement.
> Plaintiffs have not alleged that the Agreement imposes
> any duty on Bosques not to make such statements;
> rather, the source of such an obligation lies
> elsewhere (i.e., in Puerto Rico defamation law).
> True, the parties were in a contractual relationship,
> and Bosques ostensibly would not have made the alleged

> statements absent that relationship.  But the
> relationship, as memorialized in the Agreement, did
> not cover the tortious conduct alleged—any more than
> it would cover, say, Bosques's setting the store on
> fire.

Id. (emphasis in original).

As a closer factual analog, this Court views Linares-Acevedo as persuasive here.  38 F. Supp. 3d 222.  In that case, plaintiff Linares and his wife purchased two lots in South Carolina from Linares's cousin.  Id. at 226.  Linares's cousin failed to disclose that the lots were in a 100-year flood zone and worth a fraction of the $68,000 he paid.  Id.  Title never transferred.  Id.  Linares brought a complaint asserting: "(1) damages under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141; (2) fraud; (3) misrepresentation; and (4) breach of contract."  Id.  The court dismissed the claim: "[Linares]'s injuries (economic or otherwise) directly arise out of [the cousin's] alleged fraud and misrepresentation, conduct which forms the basis of Linares's breach of contract claim. Because [the cousin's] alleged breach of duty of care is intertwined with the alleged breach of contract, plaintiffs cannot bring a separate cause of action under Article 1802 . . . ."  Id. at 228.

Similarly, in Lincoln Rd. Prods. v. Reign Entm't Grp., No. CV 12-1895 (JAG/BJM), 2014 WL 12726554, at *5 (D.P.R. Sept. 8, 2014), Magistrate Judge McGiverin, in a report and

recommendation, held that a tort action did not lie under
Article 1802 when it was based on conduct intertwined with a
promotion contract.  The plaintiff Lincoln Road Productions
("Lincoln"), a company specializing in producing and promoting
large-scale entertainment events, contracted with defendant
Reign Entertainment Group ("Reign") to provide NBA players for
an exhibition game in Puerto Rico.  Id. at *1.  After executing
the agreement, Lincoln learned that the game might be cancelled.
Id. at *2.  Lincoln contacted Reign who dismissed the rumors and
instructed Lincoln to continue with the contract.  Id.  The game
had in fact been cancelled.  Id.  Lincoln sought contractual and
tort damages as a result of, among other things, selling tickets
and reputational damage.  Id.  Reign and the individual
defendant defaulted.  Id. at *1.  On a motion for default
judgment, the court held, citing Isla Nena and Nieves Domenach,
that Lincoln was entitled to breach of contract damages, but
could not recover on a claim under Article 1802 because
"Lincoln's injuries (economic or otherwise) arose directly from
the defendants' failure to hold the game as promised, conduct
which forms the basis of the breach of contract claim.  Lincoln
has not identified any duty 'imposed by nature [or] by law'
separate from that created contractually, as required for a
valid negligence claim." Lincoln Rd. Prods., 2014 WL 12726554,
at *5 (citation omitted).  In sum, the court held that, "because

the defendants' alleged breach of a duty of care is intertwined with their alleged breach of contract, Lincoln cannot bring a separate cause of action under Article 1802, and the claim must be dismissed." Id.

More recently, in Burk v. Paulen, 100 F. Supp. 3d 126, 136 (D.P.R. 2015), now-Chief Judge Gelpí explained that "Article 1802 negligence applies in cases where the party causing the injury had no prior obligation or duty to the party suffering the injury . . . As such, Article 1802 generally does not apply in the context of commercial transactions." That court further explained that as an exception, "[a] plaintiff may bring a negligence claim based on a contractual relationship when there is both an alleged breach of contract and an alleged breach of the general duty not to negligently cause injury. . . but, this general duty not to act negligently must arise out of conditions separate from the parties' contract." Id. (emphasis original). Accordingly, where the plaintiff's "damages arise exclusively from Defendants' alleged breach of contract, Plaintiff does not have a separate cause of action for negligence." Id. There (as does CPC Carolina here), the plaintiff did "exactly that: he rest[ed] his negligence claim upon [the defendant's] alleged contractual duty" to perform under the contract, and therefore the Article 1802 claim was barred. Id.

[25]

CVS is correct in arguing that, similar to <u>Linares</u>, <u>Lincoln Rd. Prods</u>., and <u>Burke</u>, all of CPC Carolina's alleged Article 1802 damages exclusively arise from CVS's alleged breach of the Ground Lease.  CVS Mem. 21-22.  CPC Carolina does not appear to disagree, responding that "CVS was at fault by committing an anticipatory breach of the Ground Lease" and that breach "directly caused harm to CPC, including but not limited to any amounts for which CPC might be liable to Sellers (which is denied) as a result CVS's actions detailed above."  CPC Opp'n 25.  The purported damages to CPC arise exclusively out of the breach of the Ground Lease.  Accordingly, CPC Carolina's Article 1802 Claim (Fifth Cause of Action) is <u>DISMISSED</u>.[7]

### 3.    CPC's Doctrina de Actos Propios Claim –– Sixth Cause of Action –– is DISMISSED

"The Puerto Rico Supreme Court has unequivocally rejected application of the estoppel doctrine as developed in the common

---

[7] The dismissal of CPC Carolina's Article 1802 claim does not extinguish argument about the extent and types of damages that might be recovered for any surviving claims if CPC Carolina prevails under Puerto Rico Law.  <u>See</u> 31 P.R. Laws Ann. § 3018 ("Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby.");  31 P.R. Laws Ann. § 3024 ("The losses and damages for which a debtor in good faith is liable, are those foreseen or which may have been foreseen, at the time of constituting the obligation, and which may be a necessary consequence of its nonfulfillment.  In case of fraud, the debtor shall be liable for all those which clearly may originate from the nonfulfillment of the obligation.").

law to its local legal system . . . Instead, it has utilized a
similar equitable principle known as 'doctrina de actos propios'
and loosely translated as the 'doctrine of one's own acts.'"
CMI Capital Mkt. Inv., LLC v. Municipality of Bayamon, 410 F.
Supp. 2d 61, 76 (D.P.R. 2006) (Acosta, J.) (quoting Corraliza
Rodriguez v. Banco Desarrollo Economico, 2001 TSPR 2, 6, 2001 WL
40070).  This doctrine arises under Article 7 of the Puerto Rico
Civil Code, 31 P.R. Laws Ann § 7.  Article 7 provides in
pertinent part:

> When there is no statute applicable to the case at
> issue, the court shall decide in accordance with
> equity, which means that natural justice, as embodied
> in the general principles of jurisprudence and in
> accepted and established usages and customs, shall be
> taken into consideration.

31 P.R. Laws Ann § 7.  Article 7 "clearly provides that courts
must not decide cases based in equity unless there is no
applicable statute."  CMI Capital Mkt, 410 F. Supp. 2d at 76.

Here, it is undisputed that a contract exists between CPC
Carolina and CVS concerning the rights and liabilities of the
parties.  That contract is governed by the Puerto Rico Civil
Code relating to contracts in Puerto Rico.  Indeed, CPC Carolina
is seeking damages occasioned by the "anticipatory breach of
contract," if not recoverable as damages under that theory.  CPC
Carolina Opp'n 26-27.  CPC Carolina cites no authority
authorizing the use of this doctrine to supplement damages

otherwise not recoverable under a breach of contract theory.

See e.g., 31 P.R. Laws Ann. § 2994 ("Obligations arising from

contracts have legal force between the contracting parties, and

must be fulfilled in accordance with their stipulations."); 31

P.R. Laws Ann. § 3018 ("Those who in fulfilling their

obligations are guilty of fraud, negligence, or delay, and those

who in any manner whatsoever act in contravention of the

stipulations of the same, shall be subject to indemnify for the

losses and damages caused thereby."); 31 P.R. Laws Ann. § 3024

("The losses and damages for which a debtor in good faith is

liable, are those foreseen or which may have been foreseen, at

the time of constituting the obligation, and which may be a

necessary consequence of its nonfulfillment. In case of fraud,

the debtor shall be liable for all those which clearly may

originate from the nonfulfillment of the obligation.").  "It

appearing that there is vast statutory authority applicable to

the controversy at hand there is no need to decide the same on

equity grounds." CMI Capital Mkt. Inv., LLC, 410 F. Supp. 2d at

76.  Accordingly, CPC Carolina's Sixth Cause of Action is

DISMISSED.

### 4.   CPC's Unjust Enrichment Claim-- Seventh Cause of Action -- is DISMISSED.

CPC's claim for unjust enrichment is inapplicable for

similar reasons.  "[U]nder Puerto Rico law, the doctrine of

unjust enrichment does not apply where, as here, there is a contract that governs the dispute at issue." <u>Puerto Rico Tel. Co.</u> v. <u>SprintCom, Inc.</u>, 662 F.3d 74, 97 (1st Cir. 2011); <u>see also</u> <u>Punta Lima, LLC</u> v. <u>Punta Lima Dev. Co.</u>, 440 F. Supp. 3d 130, 151 (D.P.R. 2020) (Besosa, J.) ("[A] contract governing the dispute at issue renders the unjust enrichment doctrine inapplicable."). CPC Carolina's Seventh Cause of Action for unjust enrichment is therefore <u>DISMISSED</u>.

## IV.   CONCLUSION

For the aforementioned reasons, it is hereby Ordered:

1.   CPC Carolina's Motion for Summary Judgment (ECF No. 73) against CVS is hereby <u>DENIED</u>.

2.   The CVS Parties' Motion for Summary Judgment against CPC Carolina (ECF No. 79) is <u>DENIED</u> as to the CVS Parties' Counterclaim and CPC Carolina's First, Second, Third, Fourth and Eighth Causes of Action, and <u>ALLOWED</u> as to CPC Carolina's Fifth, Sixth and Seventh Causes of Action, which are <u>DISMISSED</u>.

3.   CPC Carolina's and CVS's motions for summary judgment in the Consolidated Actions are held in <u>ABEYANCE</u> and <u>UNDER ADVISEMENT</u> pending resolution of the lead case.

4. The lead case is held for a jury waived trial on the Court's November 2020 running trial list and the parties to this case shall submit a joint pre-trial memorandum by Friday, October 9, 2020.

**SO ORDERED.**

_/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE