UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

```
_____
                                    )
KHADIJAH AHMAD HAMDALLAH,           )
                                    )
            Plaintiff,              )
                                    )
        v.                          )          CIVIL ACTION
                                    )          NO. 19-1287-WGY
CPC CAROLINA PR, LLC,               )
PUERTO RICO CVS PHARMACY, LLC,      )
KRB UNIVERSAL INVESTMENTS, LLC,     )
INSURANCE COMPANIES A, B, and C,    )
JOHN DOE, and JANE DOE,             )
                                    )
                                    )
            Defendants.             )
_____)


_____
                                    )
RICARDO NIEVES ACEVEDO, JANET       )
MARIE VEGA RODRIGUEZ, and the       )
conjugal partnership                )
constituted between them,           )
                                    )
            Plaintiffs,             )
                                    )
        v.                          )          CIVIL ACTION
                                    )          NO. 19-1288-WGY
CPC CAROLINA PR, LLC,               )
PUERTO RICO CVS PHARMACY, LLC,      )
KRB UNIVERSAL INVESTMENTS, LLC,     )
INSURANCE COMPANIES A, B, and C;    )
JOHN DOE, and JANE DOE,             )
                                    )
                                    )
            Defendants.             )
_____)
```

```
_____
                               )
EDWARD NIEVES ROMAN,           )
                               )
              Plaintiff,       )
                               )
         v.                    )          CIVIL ACTION
                               )          NO. 19-1289-WGY
CPC CAROLINA PR, LLC,          )
PUERTO RICO CVS PHARMACY, LLC, )
KRB UNIVERSAL INVESTMENTS, LLC,)
INSURANCE COMPANIES A, B, and C;)
JOHN DOE, and JANE DOE,        )
                               )
                               )
              Defendants.      )
_____)



_____
                               )
MARÍA TERESA CRUZ MARRERO,     )
individually, and the ESTATE OF )
RAMÓN FERNÁNDEZ DELGADO composed of)
RAMÓN FERNÁNDEZ CRUZ, EDGARDO  )
JOSÉ FERNÁNDEZ CRUZ, LISA MARÍA )
FERNÁNDEZ CRUZ, JAVIER FRANCISCO )
FERNÁNDEZ CRUZ, WANDA IVELISSE )
FERNÁNDEZ CRUZ, and MARÍA TERESA )
CRUZ MARRERO,                  )
                               )
              Plaintiffs,      )
                               )
         v.                    )          CIVIL ACTION
                               )          NO. 19-1776-WGY
CPC CAROLINA PR, LLC,          )
PUERTO RICO CVS PHARMACY, LLC, )
KRB UNIVERSAL INVESTMENTS, LLC,)
INSURANCE COMPANIES A, B, and C;)
JOHN DOE, and JANE DOE         )
                               )
                               )
              Defendants.      )
_____)
```

[2]

YOUNG, D.J.[1]                                    August 20, 2021

**MEMORANDUM & ORDER**

## I.   INTRODUCTION

As these cases prove, commercial real estate transactions
are inherently risky ventures.  This memorandum and order
addresses the remaining individual seller Consolidated Actions
concerning the real estate development of a CVS Pharmacy in
Carolina, Puerto Rico that unwound after four years of
preparation.  Had all gone according to plan, the defendant CPC
Carolina PR, LLC ("CPC Carolina") was to acquire certain
contiguous pieces of property, including parcels from the
Sellers, aggregate the properties, and lease the aggregated
property to the defendant Puerto Rico CVS Pharmacy, LLC ("CVS")
(CPC Carolina and CVS are collectively "the Defendants"), which
would then construct and operate the pharmacy.[2]  The deal fell

---

[1] Of the District of Massachusetts, sitting by designation.

[2] The Court refers to the plaintiffs in the following
consolidated actions collectively as "the Sellers": (1)
Hamdallah v. CPC Carolina PR, LLC, 19-01287-WGY (plaintiff in
this action referred to as "Hamdallah"); (2) Nieves Acevedo v.
CPC Carolina PR, LLC, 19-cv-01288-WGY (plaintiffs in this action
collectively "Nieves Acevedo"); (3) Nieves Roman v. CPC Carolina
PR, LLC, 19-cv-01289-WGY (plaintiff in this action referred to
as "Nieves Roman"); and (4)Cruz Marrero v. CPC Carolina PR, LLC,
19-cv-01776-WGY (plaintiffs in this action collectively "Cruz
Marrero").  The above actions are collectively the "Consolidated
Actions."  The lead case between CPC Carolina and CVS is styled
CPC Carolina PR, LLC v. Puerto Rico CVS Pharmacy, LLC, 18-cv-
01855 (the "CPC Carolina - CVS Action").  The Hamdallah, Nieves

through, and CPC Carolina sued CVS and its parent.  CVS
counterclaimed.  The Sellers sued CPC Carolina and CVS in the
Consolidated Actions.  The Defendants settled their differences
on the eve of a bench trial, which also resolved the Sellers'
conditional claims in the Consolidated Actions for specific
performance.

     The Sellers in the Consolidated Actions seek tort damages
against CVS and CPC Carolina for breaching a general duty of
care under Puerto Rico law by charging into a real estate
development that, they claim, CPC and CVS Carolina should have
known was doomed from the start -- or at least before the
Sellers purportedly incurred damages.

     As to CPC Carolina, the terms of the Sellers' contracts
with CPC Carolina control, and there is no viable Article 1802
claim.  The alternative claim for specific performance was
resolved with the settlement of the CPC Carolina - CVS Action.

     As to CVS, the Sellers' claims under Article 1802 fail on
statute-of-limitations grounds.  For the reasons stated below,
summary judgment shall enter in favor of the Defendants and the
Consolidated Actions shall each be dismissed.

---

Acevedo, and Nieves Roman plaintiffs, represented by one
counsel, are collectively the "Hamdallah/Nieves Acevedo/Nieves
Roman Sellers."  Cruz Marrero is represented by separate
counsel.

## II.   BACKGROUND

### A.   Procedural History[3]

Before the Court are two sets of four virtually identical motions for summary judgment bought by CPC Carolina and CVS. CPC Carolina PR, LLC's Mot. & Mem. Law Supp. Summ. J., Nieves Acevedo Action ("CPC Carolina Mot."), ECF No. 65; CPC Carolina PR, LLC's Mot. & Mem. Law Supp. Summ. J., Cruz Marrero Action, ECF No. 67; CPC Carolina PR, LLC's Mot. & Mem. Law Supp. Summ. J., Hamdallah Action, ECF No. 69; CPC Carolina PR, LLC's Mot. & Mem. Law Supp. Summ. J., Nieves Roman Action, ECF No. 71; Def. Puerto Rico CVS Pharmacy, LLC's Corrected Mot. Summ. J., Nieves Acevedo Action ("CVS Mot."), ECF No. 92; Def. Puerto Rico CVS Pharmacy, LLC's Corrected Mot. Summ. J., Cruz Marrero Action,

---

[3] For ease of reference, citations to the parties' filings are to the Nieves Acevedo Action, and each filing is referred to collectively as the "Hamdallah/Nieves Acevedo/Nieves Roman Sellers'" submission.  Cruz Marrero adopted Nieves Acevedo's arguments as to CPC Carolina's motion for summary judgment and Hamdallah's opposition to CVS's motion for summary judgment, Pls.' Opp'n Co-Def. Puerto Rico CPC Carolina PR LLC's Mot. Summ. J. Filed at Docket No. 67, Cruz Marrero Action 12, ECF No. 113, adding an additional argument regarding the statute of limitations, as noted infra.  With respect to CPC Carolina's statement of undisputed fact, it is likewise taken from the Nieves Acevedo Action.  The statement of undisputed fact by CPC Carolina ("CPC SUMF") is ECF No. 64.  The Sellers' response ("CPC RSUMF") and additional statement of undisputed fact ("CPC SAUMF") are ECF No. 102, and CPC Carolina's response ("CPC RSAUMF") is ECF No. 143.  As for CVS's motions, the statement of undisputed fact by CVS ("CVS SUMF") is ECF No. 92.  The Sellers' response ("CVS RSUMF") and additional statement of undisputed fact ("CVS SAUMF") are ECF No. 96, and CVS's response ("CVS RSAUMF") is ECF No. 152.

ECF No. 93; Def. Puerto Rico CVS Pharmacy, LLC's Mot. Summ. J.,
Hamdallah Action, ECF No. 90; Def. Puerto Rico CVS Pharmacy,
LLC's Corrected Mot. Summ. J., Nieves Roman Action, ECF No. 91.

The motions for summary judgment are opposed.  Pls.' Opp'n
Co-Def. Puerto Rico CPC Carolina PR LLC's Mot. Summ. J. Filed at
Docket No. 65, Nieves Acevedo Action ("Hamdallah/Nieves
Acevedo/Nieves Roman Sellers' Opp'n CPC Carolina Mot."), ECF No.
101; Pls.' Opp'n Co-Def. Puerto Rico CPC Carolina PR LLC's Mot.
Summ. J. Filed at Docket No. 67, Cruz Marrero Action ("Cruz
Marrero Opp'n CPC Carolina Mot."), ECF No. 113; Pls.' Opp'n Co-
Def. Puerto Rico CPC Carolina PR LLC's Mot. Summ. J. Filed at
Docket No. 69, Hamdallah Action, ECF No. 103; Pls.' Opp'n Co-
Def. Puerto Rico CPC Carolina PR LLC's Mot. Summ. J. Filed at
Docket No. 71, Nieves Roman Action, ECF No. 108; Pls.' Opp'n Co-
Def. Puerto Rico CVS Pharmacy, LLC's Mot. Summ. J. Filed at
Docket No. 92 ("Hamdallah/Nieves Acevedo/Nieves Roman Sellers'
Opp'n CVS Mot."), Nieves Acevedo Action, ECF No. 95; Pls.' Opp'n
Co-Def. Puerto Rico CVS Pharmacy, LLC's Mot. Summ. J. Filed at
Docket No. 92 ("Cruz Marrero Opp'n CVS Mot."), Cruz Marrero
Action, ECF No. 131; Pls.' Opp'n Co-Def. Puerto Rico CVS
Pharmacy, LLC's Mot. Summ. J. Filed at Docket No. 90, Hamdallah
Action, ECF No. 97; Pls.' Opp'n Co-Def. Puerto Rico CVS
Pharmacy, LLC's Mot. Summ. J. Filed at Docket No. 91, Nieves
Roman Action, ECF No. 99.

[6]

CPC Carolina and CVS filed reply briefs.  CPC's Omnibus
Reply Pls.' Opp'n CPC's Mot. Summ. J. Filed Cases 19-1287
(Docket No. 103), 19-1288 (Docket No. 101), 19-1289 (Docket No.
108), 19-1776 (Docket No. 113), ECF No. 146; Reply Opp'n CVS's
Mot. Summ. J., Nieves Acevedo Action ("Hamdallah/Nieves
Acevedo/Nieves Roman Sellers' CVS Reply"), ECF No. 153; Reply
Opp'n CVS's Mot. Summ. J., Cruz Marrero Action ("Cruz Marrero
CVS Reply"), ECF No. 155; Reply Opp'n CVS's Mot. Summ. J.,
Hamdallah Action, ECF No. 149; Reply Opp'n CVS's Mot. Summ. J.,
Nieves Roman Action, ECF No. 151.

The Court heard oral argument on the motions for summary
judgment on July 30, 2020, which was continued to July 31, 2020.
Minute Order, ECF No. 159; Minute Entry, ECF No. 160; Tr.
Proceedings Held July 30, 2020 ("July 30, 2020 Tr."), ECF No.
164; Tr. Proceedings Held July 31, 2020 ("July 31, 2020 Tr."),
ECF No. 163.

The parties were permitted leave to brief questions
concerning Article 1802.  Pls. Mem. Law, ECF No. 172; CPC's
Opp'n Pls.' Mem. Law Docket No. 172, ECF No. 174; Resp. Pls.'
Mem. Law, ECF No. 175; Pls. Obj. CPC & CVS Reply Pls. Mem. Law,
ECF No. 176; Obj. CPC & CVS Reply Pls. Mem. Law, ECF No. 178.

On March 30, 2021, after resolution of the CPC Carolina –
CVS Action, the Court heard further argument on the remaining
summary judgment motions pertaining to the Consolidated Actions.

Minute Order, ECF No. 234; Tr. Proceedings Held March 30, 2021, ECF No. 242.  The parties filed further supplemental briefing. Suppl. Br. Oral Arg., ECF No. 233; Suppl. Br. Supp. Oral Arg., ECF No. 236; Resp. Pls.' Suppl. Br. Oral Arg., ECF No. 238; CVS Resp. Pls.' Suppl. Br. Oral Arg., ECF No. 243; CPC's Omnibus Resp. Suppl. Brs. Supp. Oral Arg., ECF No. 244.

### B.   Undisputed Facts

#### 1. Valle Arriba Heights

The properties in the Consolidated Actions are all located in Valle Arriba Heights, a residential area located in Carolina, Puerto Rico.  CPC SAUMF ¶ 1.  On October 16, 1964, the developer of Valle Arriba Heights encumbered these properties with restrictive covenants prohibiting non-residential use.  Id. ¶¶ 2-3.

#### 2. The Sellers - CPC Carolina Agreements

On October 3, 2013, the Sellers entered into four Purchase Agreements (the "Agreements"), each identical in all relevant respects, with KRB Universal Investments, LLC ("KRB") concerning the Sellers' real properties located Valle Arriba Heights, Carolina, Puerto Rico (the "Parcels").  CPC SUMF ¶ 1; see generally CPC SUMF, Ex. 2, Purchase Agreement, ECF No. 64-2; Statement Undisputed Material Facts Supp. Mot. Summ. J. Case No. 19-1776, Ex. 2, Purchase Agreement, ECF No. 66-2; Statement Undisputed Material Facts Supp. Mot. Summ. J. Case No. 19-1287,

Ex. 2, Purchase Agreement, ECF No. 68-2; Statement Undisputed

Material Facts Supp. Mot. Summ. J. Case No. 19-1289, Ex. 2,

Purchase Agreement, ECF No. 70-2 (collectively, the

"Agreements").  The purpose of the Agreements was to aggregate a

number of properties, including the Parcels, into one property,

and then to develop the aggregated property.  CPC SUMF ¶¶ 5, 9;

see generally Agreements.  On February 24, 2015, KRB assigned

its rights under the Agreements to CPC Carolina.  CPC SUMF ¶ 3.

     The Agreements define the "Closing" as the "close [of] the

sale contemplated by [the] Agreement[s] . . . ."  Agreements

¶ 5.  The Agreements require that possession of the Parcels

remains with the Sellers until the Closing:

> At Closing hereunder, Seller shall convey the Property to
> Purchaser by a Purchase and Sale Deed. . . .  Possession of
> the Property shall be delivered to Purchaser upon Closing.

Id. (emphasis added).  The Agreements also contained the

following provision requiring the Sellers to maintain the

Parcels:

> 7. Condition of Property
>
> Commencing on the date of this Agreement and extending
> through Closing hereunder, the Property and title to
> the Property shall remain in the same condition as on
> the date hereof, except, however, for natural wear and
> tear.  If the condition of the Property changes due to
> causes beyond the control of the Seller, Purchaser
> shall have the option of either terminating this
> Agreement and receiving a refund of the Earnest Money
> or proceeding to close the purchase and sale
> contemplated hereby and taking an assignment of any
> insurance proceeds, awards or claims held by Seller as

[9]

a result of such changed condition of the Property.
Seller shall not alter either the condition of the
Property or the status of title to the Property
without prior written consent of the Purchaser.
Seller shall not disturb, cut or remove any timber,
pulpwood, trees, shrubs or bushes from the Property
during the term hereof, <u>and all risk of loss to the
Property for any casualty or otherwise shall remain
upon Seller</u>.

<u>Id.</u> ¶ 7 (emphasis added).

The Agreements establish the consequences if the purchase

of the Parcels was not consummated <u>for any reason</u>, and more

particularly upon CPC Carolina's default, including a liquidated

damages provision:

If the sale and purchase of the Property as
contemplated by this Agreement <u>is not consummated for
any reason other than Purchaser's default</u>, the Earnest
Money and all interest earned thereon, except as
herein expressly provided to the contrary, <u>shall be
refunded to Purchaser on demand</u>.  <u>If the sale and
purchase is not consummated because of Purchaser's
default, then Seller shall have the right to retain
the Earnest Money and all interest earned thereon, as
full liquidated damages for such default of Purchaser,
the parties hereto acknowledging that it is impossible
to more precisely estimate the damages to be suffered
by Seller upon Purchaser's default</u>.  <u>The parties
expressly acknowledge</u> that retention of the Earnest
Money and all interest earned therein, <u>is intended not
as a penalty but as full liquidated damages</u>.  In the
event the purchase and sale contemplated in this
Agreement is not consummated because of Purchaser's
default, Purchaser hereby waives and releases any
right to (and hereby covenants that it shall not) sue
Seller to recover the Earnest Money, and all interest
earned thereon, or any part thereof on the grounds
that it is unreasonable in amount or that its
retention by Seller is not a penalty and not agreed
upon and reasonable liquidated damages.  <u>Seller hereby
covenants and agrees not to sue Purchaser for specific</u>

> performance of this Agreement or for damages other
> than the liquidated damages set forth above.

Id. ¶ 8 (emphasis added); CPC SUMF ¶ 7.  Although the Sellers

knew that section 8 of the Agreements contained a liquidated

damages clause in case of CPC Carolina's default, they

nonetheless claim that they may sue in tort.  CPC SUMF ¶ 8; CPC

RSAUMF ¶ 8.

According to the Agreements, CPC Carolina's obligation to

Close the Parcels was expressly contingent upon certain

conditions precedent being met.  CPC SUMF ¶ 12.  Among the

conditions precedent required by the Agreements for CPC Carolina

to have an obligation to Close were:

> (b) Purchaser obtaining all necessary and final
> zoning and governmental permits, Anteproyecto, ARPE
> Approvals, site plan approvals, tenant approval,
> access curb cuts, traffic controls, licenses, and
> approvals, for the site construction and operation of
> the proposed improvements on the Property along with
> any other required and non-appealable government
> requirements.
>
> . . .
>
> (e) Prime User and Financing Commitments have
> been received by the Purchaser.
>
> (f) No casualty, natural event or condemnation
> has occurred.

Id. ¶ 13 (quoting Agreements ¶ 11).  The Sellers were aware that

CPC Carolina was not obligated to buy the Property until certain

conditions precedent (including tenant approval) were met to CPC

Carolina's satisfaction.  Id. ¶ 14.  The Sellers knew that the

[11]

tenant of the Parcels was to be CVS.  Id. ¶ 15.  The Sellers
also knew that the "Prime User" of the Parcels under the
Agreements was to be CVS.  Id. ¶ 16.

The Agreements establish that "[i]n the event that
Purchaser delivers written notice to the Seller on or before
[the expiration of the Inspection Period] that Purchaser has
determined that the above-referenced conditions are not met, to
the sole satisfaction of Purchaser, in Purchaser's sole
discretion, then Purchaser shall not be obligated to
Close . . . ."  Id. ¶ 17 (quoting Agreements ¶ 11).

The Agreements also state that if the conditions are not
met and the Closing does not take place, then:

> Escrow Agent shall refund to [P]urchaser all but Ten
> and No/100 Dollars ($10.00) of the Earnest Money and
> all interest thereon, promptly after a receipt of
> written request from Purchaser for same.  The
> remaining Ten and No/100 Dollars ($10.00) Earnest
> Money shall be paid to Seller as option money for
> entering into this Agreement.

Id. SUMF ¶ 18 (quoting Agreements ¶ 11).

### 3. The CPC Carolina - CVS Ground Lease

On March 30, 2015, CVS and CPC Carolina executed a Ground
Lease for the lease of certain parcels of land, including the
Parcels.  CVS SUMF ¶ 4.

### 4. The Closing Failed to Occur

On April 17, 2017, CPC Carolina's counsel sent a letter to
each of the Sellers concerning the Closing date on the Parcels.

Id. ¶ 8.  CPC Carolina thereafter notified the Sellers via letter dated May 16, 2017 that the Closing would take place on May 31, 2017.  CPC SUMF ¶ 29.  The Closing did not take place in May 2017 because one of the sellers of the Premises did not disclose that a member of that seller's estate was a minor.  Id. ¶ 31.[4]

CPC Carolina then informed the Sellers via letter dated August 4, 2017, that the Closing would take place on August 14, 2017.  Id. ¶ 32.  Later, the Closing was moved to August 16, 2017.  Id.

On August 16, 2017, the Closing was halted by CPC Carolina, and the Sellers were informed that the Closing was halted "due to a situation with CVS," although the Sellers dispute that characterization in light of CPC Carolina's counsel's purported knowledge of certain restrictive covenants.  CPC SUMF ¶ 35; CPC RSAUMF ¶ 35.[5]

---

[4] The Sellers executed extensions of the inspection period and Closing dates under the Agreement, the latest of which occurred on May 25, 2017.  See generally Agreements.

[5] The Court presumes familiarity with the detailed description of the facts concerning the CPC Carolina and CVS progression of title and insurance issues relating to the project.  See CPC Carolina PR, LLC v. P.R. CVS Pharm., LLC, CIVIL ACTION NO. 18-01555-WGY, 2020 WL 5834376, at *1-5 (D.P.R. Sept. 30, 2020).

[13]

On August 25, 2017, CPC Carolina's counsel sent a letter to each of the Sellers.  CVS SAUMF ¶ 22.  The August 25, 2017 Letter was explicit that CVS had walked away from the deal:

> Many of you have contacted me asking about the status of the closing on the properties in question. As you all know, on August 16, 2017 we had to stop the closing because CVS informed us that it was not ready to sign the deed instrument containing the lease contract at that time nor to accept delivery of the Property.  Since it was crucial to my client's purchase that the lease contract be signed and the Property be transferred, the closing was stopped.
>
> As you know, from the time negotiations with you began, this transaction was structured so that the purchase of all nine properties, consolidation of the plots, signing of the lease contract and delivery of the Property would occur simultaneously.  This process was explained to you from the start, as negotiated with CVS.
>
> Around the end of April this year, and then formally in mid-May, my client notified all of you of his intention to close at the end of that month. However, after the closing notice was issued, we learned that one of you had concealed a succession involving minor children as heirs.  The discovery of that information required us to suspend the closing scheduled for late May in order to obtain judicial authorization to purchase the affected property, as required by law.  As my client was unable to fulfill its obligation to close and transfer the Property as agreed in the contract with CVS, CVS notified my client of its refusal to extend delivery of the Property, and the contract was terminated on July 5, 2017.
>
> After several negotiations with CVS we (i) helped the seller obtain proper judicial authorization and (ii) convinced CVS to extend the property delivery date until August 17 this year.  Once the sale was authorized by the Court, we prepared for the closing, notifying you of a new closing date.

[14]

On Thursday August 10, just two (2) working days before the scheduled closing date of August 14, CVS informed us that it needed time to review an issue related to restrictive conditions affecting the properties in the Registry.  They knew that these conditions had affected the properties since it was developed in 1964 and that all the title searches reviewed and approved by CVS reflected the same. These restrictive conditions were never a matter of concern for CVS, which had plenty of time to inform us since signing the contract in 2015 if they had been concerned about them.  In good faith, and to give them time to evaluate this issue, we postponed the original closing date of August 14 to Wednesday August 16, one day before the deadline given by CVS for delivery of the Property.  It should be noted that CVS inspected the Property on Sunday August 13 and found it in satisfactory condition for delivery.

On Wednesday August 16, at approximately 11:30 am, I was instructed to halt the closing.  The reason for this was that CVS notified that it would not be issuing the lease agreement, nor accepting delivery of the Property, because it was not satisfied with the lease insurance policy that it would receive from its insurer at closing, which had excluded the restrictive conditions from the coverage.  The deadline for our client to deliver the Property was the next day, Thursday August 17.  Therefore, on August 16 and also on August 17, we requested in good faith that the date for closing on and delivering the Property be extended to give CVS time to review the matter, a request they refused.  We had no other option than to notify CVS of its breach of contract on August 17.

On August 22, 2017, CVS replied that it was my client and not CVS that had breached the contract by not "purchasing and trying to deliver" the Property. However, the agreement was always to purchase, consolidate, sign the lease contract, and deliver and receive the letter of transfer at closing.

My client is exploring all options at this time, including hiring litigation attorneys to handle the matter from now on. As soon as we have more news, we will inform you.

CPC SUMF, Ex. G, Letter from Rivera Torres Law Offices, P.S.C.

("August 25, 2017 Letter"), ECF No. 64-7 (emphasis added).  The

Sellers received the August 25, 2017 Letter.  CVS SAUMF ¶ 42.

Notwithstanding their receipt, the Sellers would call CPC

Carolina's counsel "all the time" to determine when the Closing

would take place, id. ¶ 43, as they still "expected the

transaction to take place," id. ¶ 49.  There is evidence, for

example, that CPC Carolina's counsel told Nieves Roman that in

response to his questions about when they were going to Close,

CPC Carolina's counsel replied that "she was dealing with the

papers, she was talking to . . . CPC and she [would] notify

[them]."  Pl's. Answer Statement Undisputed Material Facts Supp.

Mot. Summ. J. Case No. 19-1287 Filed Puerto Rico CVS Pharmacy,

LLC D.E. 91 As Well As Submission Pl.'s Own Statement Undisputed

Material Facts ¶ 50, ECF No. 100.  CPC Carolina's counsel

testified that she told the Sellers that "there's no closing,"

that "the deal fell through," and that "CVS didn't want to sign

the lease."  CVS RSAUMF ¶ 43.[6]

---

[6] For completeness, CPC Carolina's counsel's testimony
follows:

> Uff!  [The Sellers] used to call me all the time, even
> after this [August 25, 2017 letter].  "Do you have any
> notice?  Do you know what's going on?", and I said,
> "Well, you know, as I told you in the . . . [August
> 25, 2017 letter] the deal fell through.  CVS didn't
> want to sign the lease.  I know that CPC [Carolina] is
> trying to, you know, w[eigh] their options."  You

There is no evidence that any of the Sellers contacted CVS after August 25, 2017 and before filing the lawsuits in the Consolidated Actions.  CVS SUMF ¶ 22.

On May 18, 2018, the Hamdallah/Nieves Acevedo/Nieves Roman Sellers' counsel, and on August 14, 2018 the Cruz Marrero Sellers' counsel, sent purportedly extrajudicial demand letters to CPC Carolina, but not to CVS.  CPC SAUMF ¶ 42; Pls.' Answer Statement Undisputed Material Facts Supp. Mot. Summ. J. Case No. 19-1776 Fil[]ed Puerto Rico CVS Pharmacy, LLC D.E. 93 As Well As Submission Pl.'s Own Statement Undisputed Material Facts ¶ 46, ECF No. 114.

The Sellers present evidence of economic damages incurred in preparation for a Closing that did not occur, and for property damage, theft, and vandalism which occurred after the Sellers' vacated their Parcels in anticipation of Closing at the request of CPC Carolina.  See, e.g., CPC SAUMF ¶¶ 37-38; Pl's. Answer Statement Undisputed Material Facts Supp. Mot. Summ. J. Case No. 19-1287 Filed Puerto Rico CVS Pharmacy, LLC D.E. 90 As Well As Submission Pl.'s Own Statement Undisputed Material Facts ¶¶ 26, 38, ECF No. 98; Pl's. Answer Statement Undisputed

---

know, [CPC Carolina] still want[s] to close.  And that was it.

CPC SAUMF, Ex. 19, Oct. 9, 2019 Loyda Rivera Torres Dep. 234:9-17, ECF No. 96-25.

Material Facts Supp. Mot. Summ. J. Case No. 19-1287 Filed Puerto

Rico CVS Pharmacy, LLC D.E. 91 As Well As Submission Pl.'s Own

Statement Undisputed Material Facts ¶¶ 26, 39.  There is also

evidence that permitting signage was placed (as required by

law), CVS SUMF ¶ 15, and the removal of an electrical

transformer in June 2017 occurred, possibly at the request of

CVS, in preparation for development of the project, CVS SUMF ¶

17.[7]

## III. ANALYSIS

### A.   The Summary Judgment Standard

The familiar summary judgment standard was recently

reiterated by the First Circuit and is restated here:

> Summary judgment is appropriate when the moving party
> shows that "there is no genuine dispute as to any
> material fact and the movant is entitled to judgment
> as a matter of law." Fed. R. Civ. P. 56(a).  A
> genuine dispute is "one that must be decided at trial
> because the evidence, viewed in the light most
> flattering to the nonmovant, would permit a rational
> factfinder to resolve the issue in favor of either
> party." Medina-Muñoz v. R.J. Reynolds Tobacco Co.,
> 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).
> "Facts are material when they have the 'potential to
> affect the outcome of the suit under the applicable
> law.'" Cherkaoui v. City of Quincy, 877 F.3d 14, 23
> (1st Cir. 2017) (quoting Sánchez v. Alvarado, 101 F.3d
> 223, 227 (1st Cir. 1996)).  The party opposing summary
> judgment "bears 'the burden of producing specific
> facts sufficient to deflect the swing of the summary

---

[7] It is disputed when all of the Sellers became actually
aware of the cause of the removal, but the Hamdallah/Nieves
Acevedo/Nieves Roman Sellers agree that at the latest, they knew
by May 26, 2018 that CVS may have caused the removal.  CVS RSUMF
¶ 17.

judgment scythe.'" <u>Theidon</u> v. <u>Harvard Univ.</u>, 948 F.3d
477, 494 (1st Cir. 2020) (quoting <u>Mulvihill</u> v. <u>Top-
Flite Golf Co.</u>, 335 F.3d 15, 19 (1st Cir. 2003)).
"For this purpose, [it] cannot rely on 'conclusory
allegations, improbable inferences, acrimonious
invective, or rank speculation.'" <u>Id.</u> (quoting <u>Ahern</u>
v. <u>Shinseki</u>, 629 F.3d 49, 54 (1st Cir. 2010)).

<u>Baum-Holland, LLC</u> v. <u>Hilton El Con Mgmt., LLC</u>, 964 F.3d 77, 87
(1st Cir. 2020).

In reviewing motions for summary judgment, the "Court is
"'obliged to []view the record in the light most favorable to
the nonmoving party, and to draw all reasonable inferences in
the nonmoving party's favor.'" <u>LeBlanc</u> v. <u>Great Am. Ins. Co.</u>, 6
F.3d 836, 841 (1st Cir. 1993).  "It is the role of the judge on
summary judgment to determine whether a particular inference is
reasonable." <u>Baum-Holland, LLC</u>, 964 F.3d at 93 (quoting <u>Ricci</u>
v. <u>Alt. Energy, Inc.</u>, 211 F.3d 157, 161 (1st Cir. 2000)).

    **B.**   **The CPC Carolina and CVS Parties' Motions for Summary Judgment Are Meritorious.**

        **1. CPC Carolina Is Entitled to Judgment as Matter of Law on the Tort Claims because the Claims Arise Out of and Are Controlled by the Agreements.**

CPC Carolina moves for summary judgment on the grounds that
an Article 1802 claim does not lie because the Agreements
control and the Sellers' damages arise only as a result of the
failure of the parties to close under those Agreements.  CPC
Carolina Mot. 4.  Three of the Sellers argue that "CPC incurred
in tort liability, because despite having knowledge since 2014

of restrictive covenants barring commercial development, it bore full steam ahead with CVS as joint tortfeasor with a development doomed from the start."  Hamdallah/Nieves Acevedo/Nieves Roman Sellers' Opp'n CPC Carolina Mot. 2.  Similarly, Cruz Marrero argues "that CPC knew the existence of the restrictive covenants since 2014 and fail[ed] to take timely action to avoid the final consequences instead of that CPC continued efforts in getting to a closing that could never happen incurring in negligence.  And that negligence cause[d] severe damages to the plaintiffs."  Cruz Marrero Opp'n CPC Carolina Mot. 2.

The Hamdallah/Nieves Acevedo/Nieves Roman Sellers' counsel conceded at oral argument that there is no Puerto Rico case similar to the facts presented here, July 31, 2020 Tr. 13:4-8, nor any authority from any other jurisdiction (civil code or otherwise) that has imposed liability on a contracting party for negligence in this situation.  The absence of precedent is telling and persuasive.[8]  See Nieves Domenech v. Dymax Corp., 952 F. Supp. 57, 66 (D.P.R. 1996) (Laffitte, J.) (citing Ryan v. Royal Ins. Co. of Am., 916 F.2d 731, 744 (1st Cir. 1990)) ("A

_____

[8]  The Court offered to consider certifying this question to the Puerto Rico Supreme Court.  July 31, 2020 Tr. 14-15.  The Court conditioned certification upon being bound by the Puerto Rico Supreme Court's decision.  Id.  Counsel for the Sellers were agreeable, but CPC Carolina would not agree to be bound; it reserved its rights to appeal to the First Circuit.  Id. 22.  Accordingly, the Court did not further consider certification.

plaintiff who brings an action in federal court under the
court's diversity jurisdiction cannot expect the court to blaze
new legal trails unless the plaintiff has provided the court
with a reason to believe that the local forum's highest court
would blaze the same trail.").  While a close call, the Sellers'
arguments are misplaced: their tort claims fail against CPC
Carolina because the damages are, ultimately, a result of the
failure of the parties to Close under the Agreements.

Under Puerto Rico's Civil Code, "[o]bligations are created
by law, by contracts, by quasi contracts, and by illicit acts
and omissions or by those in which any kind of fault or
negligence occurs."  P.R. Laws Ann. tit. 31, § 2992.  Pertinent
to the Consolidated Actions are obligations purportedly arising
out of contracts and tort.[9]

"Obligations arising from contracts have legal force
between the contracting parties, and must be fulfilled in
accordance with their stipulations."  P.R. Laws Ann. tit. 31,
§ 2994; see Xynergy Healthcare Capital II LLC v. Mun. of San
Juan, CIVIL NO.: 18-1208 (MEL), 2021 WL 318361, at *5 (D.P.R.

---

[9] Here there is no allegation, assertion, or evidence of a
quasi-contract.  A "quasi contract" is defined under Puerto Rico
law as "licit and purely voluntary acts by which the author
thereof becomes obligated with regard to a third person, and,
sometimes, by which there results a reciprocal obligation
between the parties concerned."  P.R. Laws Ann. tit. 31, § 5091.

Jan. 29, 2021) (López, M.J.) (citing <u>Markel Am. Ins. Co.</u> v.
<u>Díaz-Santiago</u>, 674 F.3d 21, 31 (1st Cir. 2012)).  As the Court
expressed at oral argument, under Puerto Rico law contracts are
essentially private law between the parties, July 30, 2020 Tr.
7-8, and the Puerto Rico Civil Code confirms, "contracting
parties may make the agreement and establish the clauses and
conditions which they may deem advisable, provided they are not
in contravention of law, morals, or public order," P.R. Laws
Ann. tit. 31, § 3372.  Damages for negligence in breach of
contract are recoverable, and the Civil Code states that
"[t]hose who in fulfilling their obligations are guilty of
fraud, negligence, or delay, and those who in any manner
whatsoever act in contravention of the stipulations of the same,
shall be subject to indemnify for the losses and damages caused
thereby."  P.R. Laws Ann. tit. 31, § 3018.

Turning to Puerto Rico tort law, on the other hand,
pursuant to P.R. Laws Ann. tit. 31, § 2996, obligations for
fault or negligence are subject to Puerto Rico's general tort
statute, Article 1802, P.R. Laws Ann. tit. 31, § 5141.  Article
1802 provides in pertinent part that "[a] person who by an act
or omission causes damage to another through fault or negligence
shall be obliged to repair the damage so done."  <u>Id.</u>

The juncture of contract and tort law is lynchpin of these
motions for summary judgment.  As this Court previously ruled in

[22]

granting CVS's motion for summary judgment against CPC Carolina
on its tort claim, see CPC Carolina PR, LLC v. P.R. CVS Pharm.,
LLC, 494 F. Supp. 3d 144, 154 (D.P.R. 2020), Article 1802
"generally does not apply in the context of commercial
transactions."  Linares-Acevedo v. Acevedo, 38 F. Supp. 3d 222,
228 (D.P.R. 2014) (McGiverin, M.J.) (citing Isla Nena Air
Servs., Inc. v. Cessna Aircraft Co., 449 F.3d 85, 88 (1st Cir.
2006); Betancourt v. W.D. Schock Corp., 907 F.2d 1251, 1255 (1st
Cir. 1990)).  Under Puerto Rico law, however, an exception
provides that "[a] plaintiff may bring a negligence claim based
on a contractual relationship when there is both an alleged
breach of contract and an alleged breach of the general duty not
to negligently cause injury."  Nieves Domenech, 952 F. Supp. at
65 (citing Ramos Lozada v. Orientalist Rattan Furniture, Inc.,
130 D.P.R. 712, 1992 WL 755597 (P.R. 1992)).  "This general duty
not to act negligently must arise out of conditions separate
from the parties' contract," for "[i]f a plaintiff's damages
arise exclusively from a defendant's alleged breach of contract,
the plaintiff does not have a separate cause of action for
negligence."  Id. (emphasis added).

The Sellers rely on the well-understood precept of Puerto
Rico law that the scope of negligence under Article 1802 "is as
broad as the behavior of human beings, and that it includes any
fault that causes harm or injury."  Bonilla v. Chardon, 18 P.R.

[23]

Offic. Trans. 696, 709 (1987); see Hamdallah/Nieves
Acevedo/Nieves Roman Sellers' Opp'n CPC Carolina Mot. 12.
Accordingly, they argue essentially that the duty reasonably to
pursue a real estate development is a duty separate from the
parties' contractual obligations.  Hamdallah/Nieves
Acevedo/Nieves Roman Sellers' Opp'n CPC Carolina Mot. 24-25.
While the Sellers correctly identify the applicable precept,
Article 1802 does not swallow the important and "intertwined"
duties imposed by the Agreements.  See Linares-Acevedo, 38 F.
Supp. 3d at 228 ("Because [the defendant's] alleged breach of
duty of care is intertwined with the alleged breach of contract,
plaintiffs cannot bring a separate cause of action under Article
1802, and the claim must be dismissed.").  Here, even assuming
without finding that CPC Carolina and CVS pursued a real estate
transaction that was somehow doomed to fail, the Sellers'
damages vis-à-vis CPC Carolina ultimately arise because of, and
are intertwined with, the duties under the Agreements.  This is
not a casualty case arising out of a fire on a lessor's property
within the context of a lessor-lessee relationship.  See
generally, e.g., Ramos Lozada, 130 D.P.R. 712, 1992 WL 755597.
Indeed, "Ramos Lozada involved a lessor-lessee relationship.  It
did not involve a commercial transaction, and . . . nothing in
[that] case . . . indicate[s] that the Puerto Rico Supreme Court
intended to replace the general rule that Article 1802 does not

apply in commercial transactions." _Isla Nena Air Servs., Inc._, 449 F.3d at 90.  Furthermore, "_Ramos-Lozada_ emphasized that a party may not choose whether to proceed in contract or tort when the damage suffered exclusively arises as a consequence of the breach of an obligation specifically agreed upon, which damage would not occur without the existence of a contract." _Id._ (quotations omitted).

Although the Sellers couch their claims as tort claims, Hamdallah/Nieves Acevedo/Nieves Roman Sellers' Opp'n CPC Carolina Mot. 23; Cruz Marrero Opp'n CPC Carolina Mot. 13-14, the Court is persuaded by CPC Carolina's argument that they arise ultimately -- and exclusively -- out of a breach of the Agreements.  The failure to close due to default of CPC Carolina _or any other reason_ is covered by a liquidated damages clause. Agreement ¶ 8.  Indeed, liquidated damages are precisely the type of remedies undertaken when the parties are uncertain of the type and extent of damages for these types of inherently risky transactions.  _See_ _WorldNet Telecomms., Inc._ v. _P.R. Tel. Co._, 497 F.3d 1, 7 (1st Cir. 2007) ("Puerto Rico courts have been more solicitous of liquidated damages clauses than their Anglo-American counterparts, seeming even in private contracts to permit coercive and punitive clauses so long as they are not excessively so.") (citing _Rochester Capital Leasing Corp._ v. _Williams Int'l Ltd._, 3 P.R. Offic. Trans. 226 (P.R. 1974)).

[25]

Here, the Sellers do not question the validity of the liquidated damages clause.

In the end, CPC Carolina's duty to the Sellers would not have arisen but for the Agreements, and recourse for the failure of the project is specifically covered in the Agreements. Agreement ¶ 8.  Against this backdrop, it is clear that the Sellers are attempting to circumvent the Agreements by virtue of tort claims.  See Linares-Acevedo, 38 F. Supp. 3d at 228 ("Because [the defendant's] alleged breach of duty of care is intertwined with the alleged breach of contract, plaintiffs cannot bring a separate cause of action under Article 1802, and the claim must be dismissed."); Lincoln Rd. Prods. v. Reign Entm't. Group, Civil No. 12-1895 (JAG/BJM), 2014 WL 12726554, at *5 (D.P.R. Sept. 8, 2014) (McGiverin, M.J.); see also Xynergy Healthcare Capital II LLC v. Mun. of San Juan, CIVIL NO.: 18-1208 (MEL), 2021 WL 312544, at *10 (D.P.R. Jan. 29, 2021) (López, M.J.).  While there may be conceivable instances where parties to a commercial real estate contract might bring claims under Article 1802, the Court is not persuaded that this is such a case.  Just the opposite -- to entertain such claims here would tend to destabilize the commercial relationships that the Agreements cover.  Accordingly, while a close call, all the Sellers' tort claims are DISMISSED as to CPC Carolina.

## 2. Specific Performance Claims Against CPC Carolina are Dismissed.

Although CPC Carolina and the Sellers reference alleged breaches of the Agreements in their submissions, the Sellers' breach of contract claim was limited to specific performance and brought contingent upon CPC Carolina's success in its claim for specific performance against CVS. Cruz Marrero Action, Compl. ¶ 94, ECF No. 1; Hamdallah Action, Am. Compl. ¶ 81, ECF No. 17; Nieves Acevedo Action, Am. Compl. ¶ 85, ECF No. 18; Nieves Roman, Am. Compl. ¶ 81, ECF No. 17. Because the CPC Carolina - CVS Action, Civil Action No. 18-1555-WGY, is resolved, there is no live claim for specific performance between CPC Carolina and CVS. See Joint Stipulation Dismissal Prejudice, ECF No. 223 (dismissing CPC Carolina's claims against CVS with prejudice). Therefore, the Sellers' claims in the alternative for specific performance are DISMISSED as MOOT, and this Court need not and does not address claims surrounding whether CPC Carolina breached the Agreements.

## 3. CVS is Entitled to Judgment as Matter of Law.

Even assuming without ruling that an Article 1802 claim is viable against CVS, the Sellers' claims against CVS are barred by the statute of limitations.[10] The parties agree that in this

---

[10] While CVS makes similar arguments as to CPC Carolina with respect to the viability of an Article 1802 claim, the Court need not, and does not, reach this issue.

diversity action, Puerto Rico's one-year statute of limitations applies.  CVS Mot. 13; Hamdallah/Nieves Acevedo/Nieves Roman Sellers' Opp'n CVS Mot. 18; see P.R. Laws Ann. tit. 31, §§ 5141 ("A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."), 5298 (one-year prescription period applies to "[a]ctions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in § 5141 of this title, from the time the aggrieved person had knowledge thereof").  Although "the statute of limitations is an affirmative defense with the defendant bearing the burden of establishing that a claim against it is time-barred," under Puerto Rico law, a plaintiff who "sues more than one year after the date of injury bears the burden of proving that she lacked the requisite 'knowledge' at the relevant times."  Rivera-Carrasquillo v. Centro Ecuestre Madrigal, Inc., 812 F.3d 213, 216 (1st Cir. 2016) (citations and quotations omitted).  "Put a little differently, to avoid having her claim barred as untimely, the plaintiff must show (perhaps by convincing a jury) that despite her diligence in pursuing her legal rights, she did not gain enough knowledge to bring suit until sometime after the date of her injury."  Id. at 216-17.

     There are two "types of knowledge" for purposes of engaging the bar of the statute of limitations:

The one year-period begins when a plaintiff (1) has "actual knowledge of both the injury and of the identity of the person who caused it" or (2) "is deemed to be on notice of her cause of action if she is aware of certain facts that, with the exercise of due diligence, should lead her to acquire actual knowledge of her cause of action." Alejandro-Ortiz v. P.R. Elec. Power Auth., 756 F.3d 23, 27 (1st Cir. 2014) (emphasis added) (citations omitted). Notice of the cause of action occurs "when there exist some outward or physical signs through which the aggrieved party may become aware and realize that [they have] suffered an injurious aftereffect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed." Torres v. E.I. Dupont de Nemours & Co., 219 F.3d 13, 18-19 (1st Cir. 2000) (emphasis added) (quotations omitted). Said succinctly, "[t]he clock starts ticking 'when the injured party knew or should have known of the injury and of the likely identity of the tortfeasor.'" López-Rivera v. Hosp. Auxilio Mutuo, Inc., 290 F. Supp. 3d 137, 143 (D.P.R. 2017) (emphasis added) (quoting Tokyo Marine & Fire Ins. Co. v. Perez & Cia., de P.R., Inc., 142 F.3d 1, 3 (1st Cir. 1998)); see also Corey-Lanuza v. Medic Emergency Specialties, Inc., 229 F. Supp. 2d 92, 99 (D.P.R. 2002) ("[S]ubjective reasonable diligence will determine the accrual date.").

To determine when a plaintiff should have known of the injury and its author, the analysis focuses on whether plaintiff knew sufficient facts to establish "reasonable likelihood" of an injury or liability, not "legal certainty." Estate of Alicano Ayala v. Philip Morris, Inc., 263 F. Supp. 2d 311, 320 (D.P.R. 2003) (emphasis added). In other words, the Courts must focus "on whether the plaintiff knew the facts that gave rise to the claim, not their full legal implications." Villarini-Garcia v. Hosp. Del Maestro, Inc., 8 F.3d 81, 85 (1st Cir. 1993). Once a plaintiff is aware of sufficient facts to be put on notice of a potential tort claim, they must "pursue that claim with reasonable diligence, or risk being held to have relinquished [their] right to pursue it later, after the limitation period has run." Rodríguez-Surís v. Montesinos, 123 F.3d 10, 16 (1st Cir. 1997).

When a plaintiff sues later than a year after the injury, i.e.[,] beyond the statute of limitations, they bear the burden of proving that, despite exercising due diligence, they "lacked the requisite 'knowledge' at the relevant times." Marcano Delaney v. P.R. Children's Hosp., 261 F. Supp. 3d 235, 238–39 (D.P.R. 2016) (emphasis added) (quoting Alejandro-Ortiz, 756 F.3d at 27). However, "[i]f this burden is not met, the statute of limitations will then start to run from the day of the injury regardless of whether or not there is actual knowledge." Fragoso de Conway v. Lopez, 794 F. Supp. 49, 51-52 (D.P.R. 1992). In other words, "if a plaintiff's ignorance of an injury and its origin was due to the plaintiff's own negligence or lack of care, then the statute of limitation would not be tolled." Rodríguez-Surís, 123 F.3d at 15 (citing Colón Prieto v. Géigel, 15 P.R. Offic. Trans. 313, 327-29 (1984)); see also Melendez Colon v. Rosado Sanchez, 2019 WL 3940919, at *5 (D.P.R. 2019) ("The Puerto Rico Supreme Court makes clear that a plaintiff may not delay once he has become aware of an injury, even if at the time its full scope and extent cannot be weighed.") (quotations omitted)), reversed on other grounds, 995 F.3d 262 (1st Cir. 2021).

Hernández González v. Manatí Med. Ctr., CIVIL NO. 16-3120 (RAM), 2020 WL 3547943, at *6 (D.P.R. June 30, 2020) (Arias-Marxuach, J.) (emphasis added); see Tonge Landrón v. Doctors Ctr. Hosp. San Juan, Inc., CIVIL NO. 19-1061 (DRD), 2020 WL 5506584, at *8 (D.P.R. Sept. 11, 2020) (Domínguez, J.) ("Specifically, the Puerto Rico Supreme Court has recognized two types of knowledge that will trigger the commencement of the referenced statute of limitations": "actual knowledge of both the injury and of the identity of the person who caused it" and "deemed" knowledge "when the plaintiff is aware of certain facts that, with the exercise of due diligence, should lead her to acquire actual

knowledge of her cause of action." (citations and quotations

omitted)).

As the First Circuit explains the analysis:

From a structural perspective, two of these
questions (about true knowledge and deemed knowledge)
concern alternative ways in which a defendant may
establish that a claim is barred because it is filed
too late. If the defendant succeeds in showing that
plaintiff has not satisfied, or cannot satisfy,
plaintiff's burden of proving lack of true knowledge
(that is, lack of full awareness of all that need be
known to preclude tolling), final judgment for the
defendant on the ground of late filing is appropriate.

If, instead, the finder of fact finds (or the
court, by determining that the evidence of record is
so one-sided as to compel a finding) that the
plaintiff was aware of enough facts to constitute
notice and to satisfy the deemed knowledge rule of the
Puerto Rico law of limitation of tort actions, final
judgment for the defendant on the ground of late
filing is appropriate unless plaintiff has proffered
evidence sufficient to support a finding that
representations and assurances by the defendant
persuaded plaintiff to rely reasonably and delay
institution of a civil action.

Rodríguez-Surís, 123 F.3d at 14-15.  The First Circuit

unequivocally has "dispel[led] the notion that the statute of

limitations [under Puerto Rico law] only begins running once the

plaintiff has assessed whether her claim has merit," holding

that the plaintiff instead "need only learn of the injury and of

the identity of the tortfeasor."  Alejandro-Ortiz, 756 F.3d at

30.  "Whether plaintiff has 'exercised reasonable diligence' as

to knowledge of injury and identity of tortfeasor 'is usually a

jury question . . . so long as the outcome is within the range

[31]

where reasonable men and women can differ.'"  Calderon Amezquita
v. Rivera-Cruz, 483 F. Supp. 3d 89, 104 (D.P.R. 2020) (Gelpí,
C.J.) (quoting Villarini-Garcia, 8 F.3d at 86).  "Yet, in
certain cases, the court may 'determin[e] that the evidence of
record is so one-sided as to compel a finding . . . that the
plaintiff was aware of enough facts to constitute notice and to
satisfy the deemed knowledge rule of the Puerto Rico law of
limitation of tort actions.'"  Rosario v. United States, Civil
No. 14-1410 (BJM), 2017 WL 3534990, at *4 (D.P.R. Aug. 16, 2017)
(McGiverin, M.J.) (quoting Rodríguez-Surís, 123 F.3d at 14-15).

     Although CVS's argument is cast imprecisely as both types
of knowledge, actual knowledge is sufficient to trigger the
statute of limitation applicable here.  CVS Mot. 14.
As an initial matter, the Court observes that CVS originally
moved for summary judgment on the issue of signage being posted
and the removal of an electrical transformer.  Id. 9.  Taking
all evidence in the light most favorable to the Sellers, they
might not have been actually aware until May 26, 2018 that CVS
purportedly caused the removal of the transformer.  CVS SAUMF
¶ 17.  Nevertheless, CVS correctly argues that by August 2017
the Sellers were aware that they had been damaged and that CVS
was the tenant.  CVS Mot. 14.  As CVS further argues in its
reply, the Sellers shifted their statute-of-limitations argument
in response to CVS's motion, perhaps conceding or abandoning the

transformer statute-of-limitation issue altogether, to a broader
failure-to-terminate-the-Ground-Lease theory, in which CVS could
not have known that it was damaged until June 2018 when CPC
Carolina sent a further letter to the Sellers to notify them of
nuisance proceedings initiated by the Municipality of Carolina.
Hamdallah/Nieves Acevedo/Nieves Roman Sellers' CVS Reply 2-5;
see Hamdallah/Nieves Acevedo/Nieves Roman Sellers' Opp'n CVS
Mot. 16-17, 21.  The Sellers' focus on the subjective and
disputed factual issues of knowledge and diligence as to CPC
Carolina's actions and purported representations is
unpersuasive.  See Hamdallah/Nieves Acevedo/Nieves Roman
Sellers' Opp'n CVS Mot. 19-25.  Using the First Circuit's words,
the Sellers have "not satisfied, or cannot satisfy, [their]
burden of proving lack of true knowledge (that is, lack of full
awareness of all that need be known to preclude tolling)," so
"final judgment for [CVS] on the ground of late filing is
appropriate."  See Rodríguez-Surís, 123 F.3d at 14; see also
Alejandro-Ortiz, 756 F.3d at 27 ("We clearly stated [in
Rodríguez-Surís] that the Supreme Court of Puerto Rico explained
in Colón-Prieto that [actual knowledge] is tantamount to the
plaintiff having knowledge of the injury and of the identity of
the author of the injury.").  As CVS argues in their Reply:

> Here, there is no question that in the August 25,
> 2017 letter, Plaintiffs were put on notice of what

they claim was CVS's "failure to terminate sooner."
The letter states:

> just two (2) working days before the initial
> August 14 closing date, CVS informed us that
> it needed time to review a matter related to
> certain restrictive conditions that affect
> the properties in the Registry.  You should
> know that the aforesaid conditions have
> affected the properties since the area was
> developed in 1964, and that they were
> reflected in all of the title studies that
> CVS reviewed and approved.  The existence of
> these restrictive covenants was never an
> issue for CVS, which had ample opportunity
> since the signing of the contract in 2015 to
> inform us if they were a concern.

ECF No. 92-9 at 2 (emphasis added).  The August 25,
2017 letter also clearly states that CVS "would not be
granting the rental contract or accepting delivery of
the Property" because "it was not satisfied with the
rental insurance policy its insurer had prepared for
the closing, which excluded the restrictive conditions
affecting the building."  Id. (emphasis added).  Thus,
by August 25, 2017, Plaintiffs clearly knew that CPC's
transaction with CVS would not be going forward.  If
Plaintiffs had any doubt, Plaintiffs were required to
make "reasonable, active efforts to seek answers and
clarify doubts" from CVS and not "wait[] for answers
to fall from the sky."  See Quintana Lopez [v. Liggett
Group, Inc., 336 F. Supp. 2d 153, 157 (D.P.R. 2004)].

Plaintiffs nevertheless argue that the August 25
letter (which speaks for itself) did not put them on
notice they had suffered harm because CPC did not
invoke certain provisions of CPC's contract with
Plaintiffs and because CPC stated that it -- CPC --
was "exploring all options at this time."  Opp'n at
19-20.  Whether these statements gave [the Sellers]
any false assurances about its transaction with CPC
does not change that Plaintiffs were clearly put on
notice -- at that time -- about CVS's decision "not
[to] grant[] the rental contract or accept[] delivery
of the Property."  ECF No. 92-9 (emphasis added).
Plaintiffs also knew, by August 25, 2017, that they
had suffered damage.  See Opp'n at 4 ¶ 38; ECF No. 96

at 11 ¶ 38 (Plaintiffs' own statement of facts where
Plaintiffs state that, by August 14, 2017, "plaintiff
had terminated a lease with a third party for the use
of [their] rooftop").  Thus, at that time, the statute
of limitations for any claim against CVS based on
CVS's alleged "failure to terminate sooner" began to
run.  Plaintiffs nevertheless waited almost two years,
until April 1, 2019, to file a complaint against CVS.

Hamdallah/Nieves Acevedo/Nieves Roman Sellers' CVS Reply 13-14

(emphasis added).  The Court considers this analysis persuasive.

Two things were actually known by the Sellers at the time

CPC Carolina communicated to the Sellers per the August 25, 2017

Letter: (1) the Sellers had been damaged to the extent the deal

was dead vis-à-vis CVS; and (2) CVS had indicated to CPC

Carolina that the deal had expired and was not proceeding.  See

August 25, 2017 Letter.

To be sure, there is evidence that the Sellers still

expected the deal to close, but this expectation, taken in the

light most favorable to the Sellers, was generated by CPC

Carolina, and moreover it does not change the fact that the

Sellers were on notice that the deal was off by August 25, 2017.

See August 25, 2017 Letter.  Despite their continued belief and

expectations, there is no evidence that the Sellers did not

understand the August 25, 2017 Letter.[11]  The Sellers' attempt to

---

[11] The Court observes that it is rare to see such
information transmitted to a plaintiff concerning the alleged
injury and identity of the purported tortfeasor in such detail.
The Sellers had a roadmap to CVS's door and yet did not pursue
that path.

shift their knowledge of these facts based upon CPC Carolina's
purported representations to the Sellers is unpersuasive.
Indeed, the First Circuit teaches that as to CVS, statements
made by third parties, such as CPC Carolina's counsel regarding
its next steps, are legally inconsequential:

> According to the Puerto Rico Supreme Court, only the
> assurances of the tortfeasor, and not those of a third
> party, could have had any effect on the statute of
> limitations then running on her cause of action.
> Colón Prieto, 15 P.R. Offic. Trans. at 329-30, 115
> D.P.R. 232.  This is the law in Puerto Rico, and with
> good reason.  The chief purpose of the statute of
> limitations is to provide resolution and stability to
> potential litigants, so that persons are not exposed
> indefinitely to the threat of suit.  Cintrón v. Com.
> of P.R., 127 P.R. Dec. 582, 588 (1990), 27 P.R. Offic.
> Trans. ---- ("[T]he principal purpose of a statute of
> limitations is to secure the economic and social
> stability of bilateral relations by encouraging swift
> claims for the performance of contractual or legal
> obligations and thus procure the tranquility of the
> defendant against the eternal threat of civil suit."
> (citations omitted)).  A cause of action ought not be
> Damocles's sword.

Alejandro-Ortiz, 756 F.3d at 29; see Rosario, 2017 WL 3534990,
at *5.  Had CVS made assurances to the Sellers, it would be a
different story, one within the provenance of the jury.  See
Rodríguez-Surís, 123 F.3d at 23 ("We direct, explicitly, that
the only limitation of actions issue remaining for proceedings
on remand is the issue regarding reasonableness of reliance on
assurances of the defendants, evaluated in the context of
evidence of assurances by unaffiliated third parties.").  There
is no evidence that CVS made any indication to the Sellers that

[36]

the deal was going to proceed or was somehow revived after
August 25, 2017.  See CVS SUMF ¶ 22.

The August 25, 2017 Letter was clear: the deal was off,
even if CPC Carolina was still weighing its options.  See August
25, 2017 Letter.  The Sellers, armed with this letter, and
thereby with knowledge that CVS was not proceeding with the
deal, failed even to attempt to contact CVS.  See CVS SUMF ¶ 22.
On the record before the Court, the Sellers had actual knowledge
of their injury and of the identity of CVS as the purported
tortfeasor.  Alternatively, the "evidence of record is so one-
sided as to compel a finding," see Rodríguez-Surís, 123 F.3d at
14, on this issue under a deemed knowledge standard.

The Sellers' fallback position is that even if the
limitations began running on August 25, 2017, the later
extrajudicial letter to CPC Carolina interrupted the statute of
limitations because the parties were in perfect solidarity.
Hamdallah/Nieves Acevedo/Nieves Roman Sellers' Opp'n CVS' Mot.
22-23; see P.R. Laws Ann., tit. 31 § 5303 ("Prescription of
actions is interrupted by their institution before the courts,
by extrajudicial claim of the creditor, and by any act of
acknowledgment of the debt by the debtor.").  The Sellers are
incorrect as matter of law.

Since 2012, the law of Puerto Rico with respect to joint
tortfeasors is generally that "the statute of limitations must

be tolled separately for each joint tortfeasor." Rivera-
Carrasquillo, 812 F.3d at 217 n.4 (citing Fraguada Bonilla v.
Hospital Auxilio Mutuo, 186 P.R. Dec. 365, 2012 WL 3655336
(2012)); Lopez-Rivera, 290 F. Supp. 3d at 143.  "Under the rule
set forth in [Fraguada Bonilla], . . . 'the timely filing of a
complaint against an alleged joint tortfeasor does not toll the
statute of limitations against the rest of the alleged joint
tortfeasors,' unless they share a perfect, as opposed to an
imperfect, joint obligation."  Rivera-Carrasquillo v. Centro
Ecuestre Madrigal, Inc., Civil No. 12-01862 (JAF), 2016 WL
1642627, at *5 (D.P.R. Apr. 25, 2016) (Fuste, J.) (quoting
Fraguada Bonilla, 186 D.P.R. at 389, 393).  Under that legal
precept, "perfect joint liabilities occur 'among several persons
joined by a common interest, who interact frequently with each
other or know each other.'"  Id. (quoting Fraguada Bonilla, 186
P.R. Dec. 365, 2012 WL 3655336).  Vicarious liability situations
are a good example of this situation.  Id.  Another is a
hospital-physician relationship.  See, e.g., Ramirez-Ortiz v.
Corporacion Del Centro Cardiovascular De P.R. y Del Caribe, 994
F. Supp. 2d 218, 223 (D.P.R. 2014) (Besosa, J.).  It is the
"common interest" language of Fraguada Bonilla that the Sellers
rely on here.  Hamdallah/Nieves Acevedo/Nieves Roman Sellers'
Opp'n CVS Mot. 23.

The Sellers cite no caselaw where perfect solidarity exists between lessor and lessee vis-à-vis third parties, or, indeed, in any real estate development.  Id.  CVS cites to cases where the parties are vicariously liable.  Hamdallah/Nieves Acevedo/Nieves Roman Sellers' CVS Reply 15; Cruz Marrero Hamdallah/Nieves Acevedo/Nieves Roman Sellers' CVS Reply 13-14. The Sellers argue that CPC Carolina and CVS were working as a "joint venture" over several years to develop a CVS Pharmacy in Carolina "pursuant to the terms of the Ground Lease." Hamdallah/Nieves Acevedo/Nieves Roman Sellers' Opp'n CVS Mot. 23.  This single phrase, however, is undeveloped argument.  As CVS correctly argues, the Sellers have failed even to attempt to set out the elements of a joint venture under Puerto Rico law. CVS Resp. Pls.' Suppl. Br. Oral Arg. 2; see De Arellano v. Sandrine Corp., Civil No. 11-1289 (JAF), 2012 WL 899261, at *3 (D.P.R. Mar. 15, 2012) (Fuste, J.) (dismissing joint-venture argument on motion to dismiss where plaintiff argued Florida law rather than Puerto Rico law).  Here, the Sellers have not met their burden as to solidarity between CVS and CPC Carolina; indeed, this is an instance of imperfect solidarity.

Finally, Cruz Marrero argues that the statute of limitations is tolled because the torts are continuing in nature.  First, Cruz Marrero argues that because "neither CPC nor CVS [has] returned to the [Sellers] their property nor have

[39]

they complied with the contractual provisions of delivering the amount of money that was placed in the escrow account, as agreed" under the Agreements the statute of limitations did not expire.  Cruz Marrero Opp'n CVS Mot. 13.  This argument is meritless: there is no evidence of a contractual relationship between CVS and the Sellers, nor is there any evidence that title ever passed on the Parcels.

Second, Cruz Marrero claims that the damages are "continuing" inasmuch as CVS did nothing to secure the property. Id. 13-15.  Assuming without ruling that the legal theory of failure to safeguard property was properly pled, CVS is correct that continuing damages from a failure to secure the Parcels upon the deal falling apart does not extend the statute of limitations.  Cruz Marrero Hamdallah/Nieves Acevedo/Nieves Roman Sellers' CVS Cruz Marrero Reply 14-15 (citing M.R. (Vega Alta), Inc. v. Caribe Gen. Elec. Prods., Inc., 31 F. Supp. 2d 226, 240 (D.P.R. 1998) (Fuste, J.)).  To the extent that CVS somehow harmed the Sellers by withdrawing from the Ground Lease, its final act or omission occurred when it notified CPC Carolina that it was out of the deal on August 17, 2017, and as to the Sellers at the latest on August 25, 2017, when CPC Carolina placed the Sellers on actual notice that CVS was not proceeding.

[40]

Indeed, this case is unlike Rivera Ruiz v. Municipio de Ponce, 196 D.P.R. 410 (P.R. 2016).[12]

In Rivera Ruiz, the Puerto Rico Supreme Court held that the continuing omission by a municipality to fix a sewer caused recurrent flooding was a continuing tort.  See id. at 430. The Puerto Rico Supreme Court reconciled Puerto Rico law on the issue:

> [B]efore damages caused by any culpable or negligent act or omission of a continued nature, the limitations period to initiate an action to request compensation begins to elapse when the last acts or omissions are verified or the final result is produced, whichever is later.  This norm is not incompatible with the cognitive theory of damage that governs our system. Because the continued damages are inexorably linked to the cause that originates them, the definitive knowledge of the losses caused is verified on the day that the source ceases, since as long as it exists, and therefore more damages related to it are foreseeable, we cannot talk about a definitive result.

Id. at 426 (quotations omitted).  Here, the allegedly unlawful act is CVS's pursuit of a project that was purportedly doomed from its inception.  Cruz Marrero's attempt to parlay CVS's withdrawal from the deal -- a cessation of act -- as a continuing omission to secure the Sellers' properties is

---

[12]  The Court notes that a translated copy of this case was not included in the record, but the Court has located a translation accepted in this district in another action.  See Order, Ex. A, Certified Translation Rivera Ruiz v. Mun. de Ponce, 196 D.P.R. 410 (P.R. 2016), ECF No. 94-1, McMillan v. Rodriguez-Negron, CIVIL NO. 19-1639 (CCC-MDM) (D.P.R. filed Dec. 18, 2020) (Morgan, M.J.).

[41]

untenable.  Moreover, the Sellers' evidence of vandalism damages causally linked to CVS's purported inaction after August 25, 2017 is mere speculation.  Accordingly, Cruz Marrero's argument that CVS's purported omission are "continuous" fails, and the statute of limitations expired one year after August 25, 2017.

## IV.  CONCLUSION

For the aforementioned reasons, it is hereby Ordered:

1.  CPC Carolina's Motions for Summary Judgment (ECF Nos. 65, 67, 69, and 71) against the Sellers are hereby <u>ALLOWED</u> and the Consolidated Actions are each <u>DISMISSED</u> as to CPC Carolina.

2.  The CVS Parties' Motions for Summary Judgment against the Sellers (ECF Nos. 90, 91, 92, and 93) are <u>ALLOWED</u> and the Consolidated Actions are hereby <u>DISMISSED</u> as to CVS.

3.  Judgment shall enter in favor of Defendants against the Sellers in each of the Consolidated Actions.

**SO ORDERED.**

/s/ William G. Young<br>
WILLIAM G. YOUNG<br>
JUDGE<br>
of the<br>
UNITED STATES[13]

---

[13] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 43 years.

[42]